**MILWAUKEE GUN CLUB,**
Plaintiff–Appellant,

v.

David F. SCHULZ, Milwaukee County Executive, Robert G. Ott, Milwaukee County Corporation Counsel, and County of Milwaukee, Defendants–Appellees.

No. 92–1007.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1992.

Decided Nov. 17, 1992.

As Amended Nov. 23, 1992.

the Gun Club from its present site on the shores of Lake Michigan. The Gun Club brought claims for temporary and permanent injunctive relief under 42 U.S.C. §§ 1983, 1985, and 1988, alleging that its rights under the Fourth, Fifth, and Fourteenth Amendments were threatened. The district court granted the Gun Club's motion for a preliminary injunction. Subsequently, finding that Milwaukee County had superior rights to the land occupied by the Gun Club, the court lifted the injunction and dismissed the case *sua sponte*. We affirm.

### I.

To understand the issue in this case, it is necessary to recount a bit of Milwaukee history. In a series of legislative acts from 1893 to 1921, the State of Wisconsin granted submerged parcels of the Lake Michigan shoreline to the City of Milwaukee. These acts provided that the city was to fill in a portion of the lands for use as public parks. The lake shore land at issue in this case, located east of and adjacent to Lake Park, was transferred from the state to the city under Chapter 307, Wisconsin Laws of 1921. The statutory conditions of the grant provided that the land be used for no other purpose than as a public park and boulevard, and prohibited the city from selling or leasing the land.

Mark M. Camp (argued), Pfannerstill & Camp, Wauwatosa, Wis., for plaintiff-appellant.

Robert G. Ott, John F. Jorgensen (argued), Office of the Corp. Counsel, Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Milwaukee Gun Club filed this action to prevent Milwaukee County from evicting

The 1921 grant was amended, at the request of the City of Milwaukee, by Chapter 261, Wisconsin Laws of 1933. The 1933 amendment permitted the city to build and operate a water purification plant on a portion of the land adjacent to Lake Park, but otherwise reiterated the restriction concerning use of the land for a public park and boulevard, as well as the prohibition against alienation.[1] The Milwaukee Water

1. Section I of the 1933 amendment provides:
   All the right, title and interest of the state of Wisconsin in and to the following land along and adjacent to the shore of Lake Michigan, and partly submerged, ... are hereby granted in fee to the said city of Milwaukee to be held and used by said city as a part of its system of public parks and boulevards; provided, that said land hereby granted shall not be leased

   or sold by said city of Milwaukee nor used for any other purposes than as a public park and boulevard. *Provided further, that the city of Milwaukee is hereby authorized to build, operate and maintain a water purification plant on that portion only of the aforesaid grant of land lying adjacent to Lake Park, and that if, when and after said city shall build, operate and maintain a water purification plant over and*

Purification Plant was placed in service in 1939.

The Milwaukee Gun Club was incorporated under the laws of Wisconsin as a non-profit corporation in 1919. In that year, the city authorized the Gun Club to build a shelter house on the lake shore of Lake Park, a stretch of land included in the 1921 grant from the state to the city. In anticipation of the construction of the Milwaukee Water Filtration Plant, the City of Milwaukee Park Board subsequently instructed the Gun Club to move its facility southward. In 1929, the Gun Club constructed its present facility, located approximately 600 feet south of the plant.

In a 1936 referendum, the voters of Milwaukee approved the transfer of land administered by the City Board of Park Commissioners for park and parkway purposes to Milwaukee County, on the condition the county operate the lands as public parks and parkways. However, the restriction on alienation in Chapter 307, Wisconsin Laws of 1921, prevented immediate transfer of ownership of the submerged lands along the lake front. This obstacle was removed by Chapter 297, Wisconsin Laws of 1937, which permitted the city to transfer to the county all or any part of the submerged lands that had previously been ceded by the state for park or parkway purposes. The statute contained an exception for lands ceded for purposes other than parks and parkways, including water purification.[2]

Notwithstanding the transfer of the city park system to the county, the land on which the Milwaukee Gun Club is situated was never formally conveyed. On October 15, 1936, the Common Council of the City of Milwaukee unanimously adopted a resolution directing the proper city officers to transfer the ownership of all lands and improvements administered by the city's Board of Park Commissioners to the county. The city conveyed by deed certain parks and parkways pursuant to the 1937 statute; however, questions concerning title, easements, and legal descriptions of the city lake front lands prevented immediate delivery of the deeds for these lands to the county.

In 1945, 1947, and again in 1957, the county submitted deed drafts to the city, but the conveyance of the submerged lands was never executed. Despite this omission, the county has for the past fifty-five years operated and maintained a consolidated park system. Moreover, since 1937, the county and the Gun Club have treated the property the Gun Club occupies as owned by the county. In 1983, at the request of the Milwaukee Commissioner of Parks, the Gun Club and the county entered into a five-year lease.

In 1988, the Gun Club requested that the lease be extended. The County Board of Supervisors granted a one year extension in November, 1988 and presented the resolution to County Executive David Schulz for approval. Schulz approved the extension on the condition that the Gun Club would vacate the premises by December 31, 1989, and not seek further extensions or attempt to negotiate a new lease. The Gun Club agreed to these terms in writing.

Subsequently, on January 23, 1990, the Gun Club filed a suit in the district court for the Eastern District of Wisconsin seeking to prevent the county from evicting the Club from its site in violation of the Club's rights under the Fourth, Fifth, and Fourteenth Amendments. The complaint named as defendants Milwaukee County, County Executive Schulz, and the county

---

*on the portion of said land hereinbefore provided for, such building, operation and maintenance shall not be deemed or construed a violation of the aforementioned public park and boulevard provision of this section.*
Chapter 261, Wisconsin Laws of 1933.

**2.** Section 1. The city of Milwaukee is hereby authorized and empowered to cede, grant, or lease to the county of Milwaukee for purposes of public parks or parkways, all or any part of such submerged lands extending into Lake Michigan at any time heretofore ceded to said city by the State of Wisconsin for said purposes, with the exception of such submerged lands as may have been previously ceded to the city of Milwaukee by said state for harbor and terminal purposes, waterworks, water purification purposes, and purposes other than parks and parkways.
Chapter 297, Wisconsin Laws of 1937.

corporation counsel. In a motion for a preliminary injunction, the Gun Club presented evidence that the city, not the county, owned the land. The county did not dispute this claim and the Gun Club's motion was granted on January 29, 1990.

On January 4, 1991, the mayor, city clerk, and special deputy comptroller of Milwaukee executed a quitclaim deed conveying the city's interest in the lake front land occupied by the Gun Club to the county. The county then moved the district court to vacate the preliminary injunction. On October 22, 1991, finding that Gun Club had no right to impede eviction by the county, the court dissolved the injunction and dismissed the case.

## II.

The Gun Club makes two arguments on appeal. The first is that the city cannot legally transfer the land on which the Gun Club sits to the county because this land was set aside for water purification purposes under the 1937 act. For this reason, the Gun Club insists, the 1991 quitclaim deed for the submerged or partly submerged lands adjacent to Lake Park is void.

Second, the Gun Club argues that the quitclaim deed is void by reason of certain procedural deficiencies in its conveyance. Specifically, the Gun Club avers that, in violation of statutory requirements: (1) the Milwaukee Common Council did not authorize the 1991 conveyance; (2) the city did not refer the transfer of the submerged lands to the city plan commission for its consideration; (3) the city attorney did not approve the deed. We address the Gun Club's arguments seriatim.

We review *de novo* the district court's interpretation of state law. *Salve Regina College v. Russell*, — U.S. —, —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir.1991). In so doing, "[w]e begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "If the plain language of the statute is clear, we do not look beyond those words to interpret the statute." *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 270 (7th Cir.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). However, we are mindful that in ascertaining the plain meaning of the statute, the court must look not only to the particular statutory language at issue, but to the language and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988).

In 1933, the Wisconsin legislature amended the 1921 grant of lake shore land to the city for park and parkway purposes. The 1933 amendment permitted the city to construct a water purification plant on that portion of the land "lying adjacent to Lake Park." By Chapter 297, Wisconsin Laws of 1937, the state legislature permitted the city to transfer the lake shore land to the county, specifically excepting land previously ceded to the city for "water purification purposes." The Gun Club claims that its facility is located on land that falls within this exception, that is, land that cannot lawfully be transferred to the county.

In Wisconsin, municipalities have no inherent right of self-government that is beyond the legislative control of the state. *Van Gilder v. Madison*, 222 Wis. 58, 268 N.W. 108, 109 (1936). Consequently, cities are creatures of the state legislature and have only such powers as are expressly granted to them and such others as are necessary to implement the powers expressly granted. *Schroeder v. City of Clintonville*, 90 Wis.2d 457, 280 N.W.2d 166, 169 (1979). Applying these principles to this case, we find the Gun Club's interpretation of state law is erroneous and the City of Milwaukee acted within the scope of its powers when it transferred the lake

shore land the Gun Club occupies to the county.

The 1933 amendment was enacted to allow the city to build a water purification plant on land otherwise devoted to use as a public park and boulevard. The act reiterates the 1921 grant and simply identifies the portion of ceded land where the plant could be built; it does not provide that all of the "land lying adjacent to Lake Park" be reserved for the purpose of building the plant.[3] Indeed, as the district court observed, if the law required the entire parcel to be reserved for this purpose, one might wonder how the gun club could have been using the land for the past seventy years. Moreover, the Gun Club's interpretation would vitiate the purpose of the 1921 grant—to cede land for use as a public park and boulevard—allowing the exception created in 1933 to swallow the rule established in 1921.

Rather, the 1933 act authorizes the city to use part of what would otherwise be park land for a water purification plant, stating that "such building, operation and maintenance shall not be deemed or construed a violation of the aforementioned public park and boulevard provision of this section." In 1937, when the city wanted to cede the park land to the county, the state legislature permitted the transfer with the exception of the submerged lands previously ceded to the city for "water purification purposes."

Read in conjunction with the 1933 act, this exception necessarily refers to the portion of land occupied by the water plant, not the entire parcel of land lying east of and adjacent to Lake Park. The city continues to own and operate the water plant. The remaining lake shore land, including that on which the Gun Club is located, is park land and, as such, could properly be transferred to the county under Chapter 297.

### III.

The Gun Club also raises technical challenges to the validity of the January 4, 1991 quitclaim deed. First, the Gun Club claims that the Milwaukee Common Council at no time authorized the conveyance of the land described in the deed. The Milwaukee Common Council has management and control of city property. Wis.Stat. § 62.11(5) (1988); Milwaukee, Wis., City Charter § 4-10 (1989).

■ In October, 1936, the common council unanimously adopted a resolution directing the transfer of all lands and improvements administered by the city's board of park commissioners to Milwaukee County. City of Milwaukee Common Council Resolution File Number 59841, October 15, 1936. As noted above, the portion of land on which the Gun Club sits is park land; accordingly, this land is within the ambit of the 1936 resolution. While the conveyance of the deed to this land from the city to the county took fifty-five years to complete, it is clear that the transfer was authorized by the common council.

■ The Gun Club argues next that the city failed to refer the quitclaim deed to the Milwaukee City Plan Commission for its consideration pursuant to Wis.Stat. § 62.-23(5). Section 62.23(5) is mandatory and requires the common council to refer the sale of land for a public park or public grounds to the city plan commission for its consideration and report before final action is taken by the council.[4] *See Scanlon v. City of Menasha,* 16 Wis.2d 437, 114 N.W.2d 791, 794–95 (1962).

3. This view finds support in the historical record of the 1933 act. In March of that year, the city attorney sent a draft of the statute to the common council with the following comment:

Section 1, Chapter 307 of the Laws of 1921 is a grant of submerged lands along the shore of Lake Michigan extending from Lafayette Place north to the northern boundary of Lake Park. This grant allows the city of Milwaukee to use such lands for only public park and boulevard purposes. Inasmuch as the filtration plant is being proposed *the location of which will be in the lands adjacent to Lake*

*Park and included in the above grant,* it is thought advisable to amend the above grant so that the land adjacent to Lake Park can be used for such filtration plant.

City of Milwaukee Common Council Resolution File Number 51268, March 20, 1933 (emphasis added).

4. The statute provides in relevant part:

**Matters referred to city plan commission.** The council, or other public body or officer of the city having final authority thereon, shall refer to the city plan commission, for its consideration and report before final action is

Putting aside the question of whether the transfer of lake shore land from the city to the county was a "sale" within the meaning of § 62.23(5), we find that this provision does not apply to this case. Section 320–15 of the Milwaukee municipal code created a board of public land commissioners, also known as the city plan commission. Milwaukee, Wis., Code § 320–15 (1990). This section states that the board was established pursuant to Chapter 243, Wisconsin Laws of 1947. However, the common council resolution authorizing the transfer of lake shore land to the county was passed ten years earlier, in 1936. The council took final action with respect to the transfer of land to the county before the city plan commission was created and, consequently, before a requirement to submit plans for such a transfer to a plan commission even existed.[5]

Finally, the Gun Club urges that the 1991 quitclaim deed is void because it was never approved by the Milwaukee City Attorney under § 304–21 of the municipal code.[6] There is no evidence in the record of the monetary value of the land in question. Even assuming that the transfer of the lake shore land involved consideration "reasonably [ ] interpreted to exceed a value of $25,000," we note that the quitclaim deed was prepared by the city attorney's office. Moreover, the deed bears the initials of the assistant city attorney who coauthored a letter with the city attorney discussing the propriety of conveying the deed to the lake front lands to the county. For these reasons, we hold that the quitclaim deed was approved by the city attorney and satisfied § 304–21. *See* 10 Eugene McQuillin, The Law of Municipal Corporations § 28.44 (3d ed.rev.vol.1990) (transfer of municipal property to another public agency is not required to be made in strict compliance with statutes designed to regulate transfers generally of municipal property).

### IV.

The order of the district court dismissing this case is AFFIRMED.

---

taken by the council, public body or officer, the following matters: . . . the location, acceptance, extension, alteration, vacation, abandonment, change of use, sale, acquisition of land for or lease of land for any street, alley or other public way, park, playground, airport, area for parking vehicles, or other memorial or public grounds;

. . . .

Wis.Stat. § 62.23(5).

5. The execution of the 1991 quitclaim deed by city officials was a ministerial act, *see State v. Carroll*, 261 Wis. 6, 51 N.W.2d 723, 731 (1952), and did not constitute "final action" by the common council as comprehended by § 62.23(5).

6. **Approval of Contracts by City Attorney.** No agreement, contract or instrument whatsoever

shall be approved by the common council, nor shall be executed by officers of the city or by any other person authorized by the common council to execute agreements, contracts or instruments for the city, the subject matter of which involves any transfer of property whatsoever or any purchase of property whatsoever, in which the consideration exceeds $25,000 or in which the consideration can reasonably be interpreted to exceed a value of $25,000, unless the city attorney's office has first approved the provisions of said agreement, contract or instrument and said fact appears in writing on the face of such document.

Milwaukee, Wis., Code § 304–21 (1991).