Charles AMATI, Carol Bolda, Brian C. Brucher, Edward R. Burton, Peggy K. Burton, Jennifer L. Ciesielski, James M. Davis, John Doe, a minor by his next friend, Steven Gorski, Jeffrey Gosselink, Carol Gulledge, Wally B. Hajost, Diane L. Hajost, Bruce R. Hillstrom, Esther K. Hohol, Vincent M. Hohol, John J. Hohol, Jr., John J. Hohol, Norma A. Jacobs, Robert A. Jacobs, John E. Jasper, Valerie A. Johns, Richard M. Johns, John B. Johnson, Wendy Johnson, Steven J. Karolewicz, Robin L. Karolewicz, Karen A. Karpavicius, Donna Karpavicius, Ann M. Kerr, Timothy R. Kerr, Elaine Klimczak, Robert G. Klimczak, James W. Koura, Daniel E. Latham, Dana L. Latham, Dennis E. Leard, Donald E. Madsen, Michael J. McCleary, Michael P. McCluskey, Laura A. Miller, Robert Minerly, Anthony H. Olszewski, Mary Jo Olszewski, Theodore E. Pierce, Joan Pierce, Thomas B. Porter, Peggy J. Porter, Shiela R. Readel, Jeffrey J. Rhode, JoAnn Richards, Cindy Schultz, Stanley Schultz, Vickie Spitzer, Kathi Taylor, Yvonne Vasquez, Dilia Vasquez, Louis Vasquez, Jr., Louis Vasquez, Plaintiffs,

Charles Amati, Anthony J. Olszweski, and Louis Vasquez, as Representatives of the Absent Class Members,

v.

The CITY OF WOODSTOCK, ILLINOIS, a municipal corporation, Herbert J. Pitzman, individually and as Chief of Police of the Police Department of the City of Woodstock, and Randall Beu, Defendants.

No. 92 C 20347.

United States District Court, N.D. Illinois, W.D.

Aug. 10, 1993.

Kenneth Kandaras, Chicago, IL; James T. Harrison, Woodstock, IL; Kenneth Leo Cunniff; and George B. Trubow, Chicago, IL, for plaintiffs.

Michael T. Caldwell, Caldwell, Berner & Caldwell, Woodstock, IL and Thomas G. Di-

Cianni, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for defendants.

## *ORDER*

REINHARD, District Judge.

### INTRODUCTION

On November 25, 1992, plaintiffs filed a 28–count complaint against defendants, the City of Woodstock, Illinois (City), Herbert J. Pitzman, individually and as the Chief of Police of the City's police department, and Randall Beu, a City police officer. Counts 1, 2, 11, 12, 21, 23 and 24 arise under the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et seq.*, (Crime Control Act) and the court has jurisdiction over these counts pursuant to 28 U.S.C. § 1331. Counts 3, 4, 13, 14 and 25 arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343. In Counts 5, 6, 15, 16 and 26 plaintiffs present claimed violations of the Illinois Constitution, Article I, section 6.[1] In Counts 7, 8, 17, 18 and 27 plaintiffs allege a violation of their right to privacy, giving rise to the common law tort of intrusion into plaintiffs' seclusion. Counts 9, 10, 19, 20, 22 and 28 arise under the Illinois Eavesdropping Act, 720 ILCS 5/14–1 to –9 (1993). The court has supplemental jurisdiction over the state law claims in Counts 5–10, 15–20, 22 and 26–28 pursuant to 28 U.S.C. § 1367.

Each defendant has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The court will address the three motions herein.

### FACTS [2]

 The relevant facts are as follows. The police department for the City maintained a telephone system for the transmission of telephone communications to and

---

1. In their complaint, plaintiffs cite to Article 6 of the Illinois Constitution as guaranteeing the right to privacy. Article 6 governs the judiciary. Article I, section 6 of the Illinois Constitution protects against invasions of privacy. The court will assume, for purposes of the pending motions to dismiss, that plaintiffs meant to refer to Article I, section 6. Plaintiffs are to file an amended complaint to conform to the court's order.

2. In reviewing a motion to dismiss, all well-pleaded allegations in the complaint are accept-
ed as true, and all reasonable inferences are drawn in favor of the plaintiff. *Dimmig v. Wahl,* 983 F.2d 86, 87 (7th Cir.1993). The court will not dismiss a complaint unless it is clear there is no set of facts a plaintiff would prove consistent with the pleadings that would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Murphy v. Lane,* 833 F.2d 106, 107 (7th Cir. 1987).

from the police department. Several of the lines were tapped, and, since at least 1982, the police department maintained one untapped telephone line for the private, personal telephone communications of police department personnel. On December 10, 1982, the police department issued a departmental correspondence which stated in relevant part:

### DICTAPHONE RECORDER.

The recorder is now hooked up and in full operation.

     *     *     *     *     *     *

As you know, all the telephone lines are taped with the exception of 338–7799. The line was intentionally left untaped to allow for personal calls * * *.

This policy will take effect immediately and be strictly adhered to.

(Compl. ¶ 5, Exh. A).

Plaintiffs offer evidence showing this practice was still in effect as of January 2, 1988 (*See* Compl.Exh. B). According to plaintiffs, at all relevant times they believed telephone communications made on the private line were not intercepted by a mechanical or electronic device. However, in June 1991, Pitzman sought and received authorization from the City Manager, Dennis Anderson, to surreptitiously wiretap the private line. This practice of intercepting calls on the private line continued until October 1992 when the private line was disconnected. In August 1992, Pitzman told plaintiff Vasquez that the police department had been intercepting telephone calls on the private line since June 1991. This was the first notice to plaintiffs that the City's "official" policy had been abandoned.

### DISCUSSION

## I. THE CITY'S MOTION TO DISMISS

### A. Count 1

In Count 1, plaintiffs maintain the City violated section 2511(1)(a) of the Crime Control Act, 18 U.S.C. § 2511(1)(a),[3] in that

the City intentionally intercepted telephone communications made by plaintiffs on the private line. The City argues the Crime Control Act is inapplicable to municipalities. According to the City, the Crime Control Act does not include a municipal corporation within its definition of "person." Plaintiffs argue a later amendment to the Crime Control Act altered the meaning of "person" to include municipalities within its ambit.

According to section 2511(1)(a), "except as otherwise specifically provided in this chapter any *person*—(a) who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be found in violation of the statute. (emphasis added). 18 U.S.C. § 2510(1)(a) (Supp.1993). "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6) (1970). The City notes that when Congress originally enacted the Crime Control Act, it specifically mentioned the exclusion of governmental units. In commenting on the definition of "person," Congress notes the definition's applicability to the entire chapter, and states:

> The definition explicitly includes any officer or employee of the United States or any State or political subdivision of a State. But see *Pierson v. Ray*, 87 S.Ct. 1213, 386 U.S. 547 [18 L.Ed.2d 288] (1967). Only the governmental units themselves are excluded. Compare *Monroe v. Pape*, 81 S.Ct. 473, 365 U.S. [167, 5 L.Ed.2d 492] (1961); *Wilford v. California*, 352 F.2d 474 (9th 1965). Otherwise the definition is intended to be comprehensive.

S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2179. Historically, courts have interpreted sections 2510(6) and 2520 to exclude governmental units from liability under the Crime Control Act. *See Spock v. United States*, 464 F.Supp. 510, 513–14 n. 4 (S.D.N.Y.1978).

---

**3.** Although plaintiffs label Count 2 as the "Omnibus Crime Control and Safe Streets Act," §§ 2510–21 are labeled "Wire and Electronic Communications Interception and Interception of Oral Communications" and is commonly referred to as the Federal Wiretapping Act. The section at issue, 18 U.S.C. § 2510 *et seq.*, is also commonly referred to as Title III of the Crime Control Act.

Plaintiffs argue the Electronic Communications Privacy Act of 1986 (Privacy Act of 1986), 18 U.S.C. § 2701 *et seq.*, amended the Federal Wiretapping Act to authorize recovery of civil damages against any person or entity.[4] According to section 2520, "any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a) (Supp.1993). Plaintiffs argue inclusion of "entity" within section 2520(a) means Congress intended victims to be able to recover from governmental units.

■■■ The starting point for interpreting a statute is the language of the statute itself. *Milwaukee Gun Club v. Schulz,* 979 F.2d 1252, 1255 (7th Cir.1992). Absent a clearly expressed legislative intent to the contrary, the statutory language must be regarded as *conclusive. Schulz,* 979 F.2d at 1255. If the statutory language is clear, it is unnecessary to look beyond that language to interpret the statute. *Schulz,* 979 F.2d at 1255. The court must not only look to the particular statutory language at issue but also to the language and design of the statute as a whole. *Schulz,* 979 F.2d at 1255.

In the present case, the statute at issue contains a definition of person which expressly excludes local governmental entities. *See* 18 U.S.C. § 2510(6). While the Congressional comment regarding this provision cites to *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), such legislative history is of no consequence in light of the plain language of section 2510(6). The definition of person contained in section 2510(6) was intended to be applied chapter-wide. *See* 18 U.S.C. § 2510. Furthermore, section 2520, the remedial portion of the Crime Control

Act, originally provided for recovery of civil damages against "any person who intercepts, discloses, or uses * * * such communications." Thus, under the original provisions, it is clear that Congress intended to preclude local governmental entities from those who could be sued civilly under the Crime Control Act.

Of course, the Crime Control Act has since been amended, particularly section 2520, and hence, the question of Congressional intent is now subject to a difference of opinion. Plaintiffs look to section 2520 as evidence that Congress intended to amend the Crime Control Act in 1986 to include local governmental entities as potential civil defendants, whereas defendants point to section 2511(a)(1) as indicative of a contrary Congressional intent. Neither provision is dispositive, however.

Even after the 1986 amendment, section 2510(6) remains unchanged. It still unequivocally excludes local governmental entities from its definition of person and continues to apply to the entire chapter. While it is true that the amended version of section 2520 now contains the language "person or entity" when referring to parties against whom a civil action may be brought, such language alone does not create an ambiguity in the statute or constitute a clear expression of Congressional intent to include local governmental entities as potential civil defendants under the Crime Control Act. First, section 2511 was also amended and now refers in one of its subsections to "person or entity." *See* 18 U.S.C. § 2511(3)(a).[5] There was no provision comparable to section 2511(3)(a) in the original statute. *See* 18 U.S.C. § 2511. No other provision of section 2511 contains the "person or entity" language. Nevertheless, to maintain consistency with the alternative language contained in section 2511(3)(a), it would have been necessary for Congress to have placed similar language in the remedial

---

**4.** Originally, the Crime Control Act authorized recovery of civil damages against a "person" and made no mention of an "entity." *See* 18 U.S.C. § 2520 (1968).

**5.** While there is no clear explanation in the legislative history as to why the term "entity" was used in section 2511(3)(a), it should be noted that the overall purpose of the 1986 amendment was to include electronic communications within the protections of the original Crime Control Act.

*See* 1986 U.S.Code Cong. and Adm.News, pp. 3555–57. In several instances in the "purpose" portion of the legislative history, the discussion refers to persons or businesses. It would certainly have been reasonable for Congress to have done so without effectuating a change in its definition of "person" in section 2510(6).

provisions of section 2520, which it did. Thus, there exists a reasonable explanation for the addition of the word "entity" in section 2520 which is short of a Congressional intent to amend the statute to include local governmental entities as potential defendants. Furthermore, in view of this likely explanation for the inclusion of the term "entity," it cannot properly be considered superfluous. *But see Bodunde v. Parizek,* No. 93 C 1464, 1993 WL 189941 *3 (N.D.Ill. May 28, 1993) ("entity" as used in section 2520(a) would be superfluous if not referring to governmental entity).

Second, the legislative history pertaining to the 1986 amendments to sections 2511 and 2520, while relatively detailed, is silent as to the reason behind the use of the term "entity." 1986 U.S.Code Cong. and Adm.News, pp. 3555–3606. It is unreasonable to conclude that Congress intended to subject an entire class of defendants to potential liability without any expression of that intent in the legislative commentary. It becomes even more peculiar that Congress would not utter any insight into its intent to do so if in fact it effectuated such a substantial change in the law by simply adding one word to the statute. This is especially so when one considers that the express definition of "person" went untouched by the 1986 amendment.[6]

As always, intent is the lynchpin of statutory interpretation. Congress' original intent was to exclude local governmental entities such as the City from civil liability under the Crime Control Act. There is simply insufficient evidence, whether in the express language of the statute or in the legislative history applicable thereto, to disrupt the clear and previously expressed Congressional intent. Accordingly, the City is dismissed from Count 1.

The court is unpersuaded by plaintiffs' reliance on *Steve Jackson Games, Inc. v. United States Secret Serv.,* 816 F.Supp. 432, 441–42 (W.D.Tex.1993), wherein the plaintiff asserted, *inter alia,* a claim against the Secret Service pursuant to 18 U.S.C. § 2510 *et seq..* There the court analyzed the definition of "intercept" and did not address whether the United States could be held liable under 18

U.S.C. § 2510 *et seq.. Compare with Asmar v. United States Dep't of Treasury,* 680 F.Supp. 248, 250 (E.D.Mich.1987) (specifically addressing whether § 2520 creates a private cause of action against the federal government and holding to the contrary; despite the reference to "entity," Congress must include a specific statutory waiver of sovereign immunity before a court will find the United States has consented to suit).

### B. Count 3—Section 1983

In Count 3, plaintiffs allege the interception of telephone communications over the police department's private line from June 1991 to October 1992 constitutes a violation of the Fourth and Fourteenth Amendments, giving rise to a cause of action under section 1983. The City argues plaintiffs' complaint avers its policy was one of protecting their privacy and, therefore, there can be no liability under section 1983.

Municipalities may be held liable under section 1983 only for acts which the municipality has officially sanctioned or ordered. *Fiorenzo v. Nolan,* 965 F.2d 348, 350 (7th Cir.1992) (quoting *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). Only those municipal officials who have final policymaking authority may by their actions subject a municipality to section 1983 liability. *Fiorenzo,* 965 F.2d at 350 (quoting *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924). "[A] municipality is not liable merely because the official who inflicted the alleged constitutional injury had the discretion to act on its behalf; rather, the official in question must possess final authority to establish municipal policy with respect to the challenged action." *Fiorenzo,* 965 F.2d at 351. Whether an official has final policymaking authority is a question of state law. *Fiorenzo,* 965 F.2d at 350; *Zook v. Brown,* 865 F.2d 887, 895 (7th Cir.1985).

Plaintiffs argue the decision by Pitzman and Anderson to depart from "official" policy and surreptitiously intercept the police department's private line became the City's policy. Plaintiffs assert Pitzman and

---

**6.** The entire legislative history of the 1986 amendment, including the portion related to the purpose of the amendment, is curiously silent as

to any intent to include local governmental entities as potential defendants.

Anderson were responsible for establishing final policy regarding interception of the police department's telephone lines under Woodstock ordinances.[7] The court finds a question of fact exists as to whether Pitzman and Anderson occupied positions with final policymaking authority regarding the interception of police department telephone lines such that their departure from "official" policy became, in itself, a municipal policy. It is true, as the City notes, that plaintiffs refer to the police department's original, constitutional practice as its official policy. *See* Compl., ¶¶ 5, 6. However, plaintiffs also aver that the interception of telephone communications over the private line "constitutes a policy and practice of the City within the meaning of ... section 1983, in that, the interception was made pursuant to a pervasive practice instituted by the Chief of Police of the Police Department, authorized by the City Manager[.]" (Compl. ¶ 82). Plaintiffs have alleged facts sufficient to support the existence of an unconstitutional policy for purposes of a Rule 12(b)(6) motion to dismiss. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The City, alternatively, argues that even if plaintiffs' allegations support a section 1983 claim, the Federal Wiretapping Act preempts such a cause of action. At the outset, the court notes plaintiffs' section 1983 claim is not premised on the Federal Wiretapping Act. Rather, plaintiffs allege the City's policy or custom violated the Fourth Amendment, giving rise to a cause of action under section 1983.

In determining whether a federal statute precludes reliance on section 1983 as a remedy for a Fourth Amendment claim, the crucial consideration is what Congress intended. *See Smith v. Robinson,* 468 U.S. 992, 1011, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). In other words, a court must determine whether Congress intended a certain statute to occupy an entire field to the exclusion of all other federal remedies. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20–22, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981). The City argues the Federal Wiretapping Act embodies Congress' interpretation of the extent of Fourth Amendment rights inherent in oral, wire and electronic communications to the exclusion of section 1983. The court rejects this argument.

The Seventh Circuit has held, "[a]lthough Title III's suppression remedy [of the Crime Control Act] has its roots in the Fourth Amendment exclusionary rule, it is not simply co-extensive with that rule." *United States v. Dorfman,* 690 F.2d 1217, 1227 (7th Cir.1982), *aff'd sub nom. in United States v. Williams,* 737 F.2d 594 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *see also United States v. Eschweiler,* 745 F.2d 435, 437 (7th Cir.1984) (addressing contentions that recorded conversations violated Fourth Amendment and Title III of the Crime Control Act), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985); *Halperin v. Kissinger,* 606 F.2d 1192, 1201–02 (D.C.Cir.1979) (discussing the differences between the Fourth Amendment and Title III of the Crime Control Act), *aff'd in part and dismissed in unrelated part,* 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981). In so holding, the Seventh Circuit recognized that the Federal Wiretapping Act did not occupy the field of privacy interests at stake in the Fourth Amendment to the exclusion of all other federal remedies. In light of *Dorfman,* it logically follows that the Federal Wiretapping Act does not preempt a section 1983 action based on a claimed Fourth Amendment violation.[8]

Moreover, were the court to hold the Federal Wiretapping Act precludes a section

---

7. Plaintiffs recite several Woodstock ordinances setting forth the duties of the Chief of Police and the City Manager in their memorandum in response to the City's motion to dismiss.

8. While the question of preemption in this context at first blush concerns the continued vitality of a federal statute (42 U.S.C. § 1983) it runs more deeply. To preempt § 1983 in this way would be to eviscerate civil remedies under the Fourth Amendment against the state and its political subdivisions. The conclusion that a statute whose sole purpose is to effectuate a constitutional remedy has been preempted must rest on grounds far more solid than those apparent here.

1983 action, plaintiffs would be foreclosed from recovering against the City *at all* in the instant case. Previously (*see* Part II, A *supra*), the court determined municipalities were not proper defendants under the Federal Wiretapping Act. If the court were to also find the Federal Wiretapping Act preempts section 1983 claims, the City would be able to indiscriminately wiretap oral, wire and electronic communications without fear of liability. The court does not believe Congress intended such a result, despite the City's contention that such a result would not be "stunning." The Supreme Court's holding in *Monell* was clear: municipalities are not immune from section 1983 liability. For this reason, the court is unpersuaded by the City's argument that a section 1983 action would undermine Congress' plan as set forth in the Crime Control Act.

▮▮▮ Additionally, there is a general presumption against congressional repeals of prior statutes by implication. *Samuels v. District of Columbia*, 770 F.2d 184, 194 n. 7 (D.D.C.1985). "Such repeals are strongly disfavored on the ground that Congress is normally expected to be aware of its previous enactments and to provide a clear repeal if it intends to extinguish an extant remedy." *Samuels*, 770 F.2d at 194 n. 7. "Section 1983, standing alone, cannot withstand preemption by a more comprehensive statutory remedy designed to redress specific unlawful actions, ... unless the statute in question manifests a congressional intent to allow an individual a choice of pursuing independently rights under both the statutory scheme and some other applicable federal statute." *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1367 (4th Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989). A comprehensive remedial framework specifically designed to redress a victim's alleged grievances evidences congressional intent to foreclose a section 1983 action. The court disagrees with the City's

contention that the Federal Wiretapping Act is such a comprehensive statute. It is true the Federal Wiretapping Act contains specific, detailed provisions regulating the interception of wire, oral or electronic communications. *See, e.g.*, 18 U.S.C. § 2518 (Supp. 1993). However, the Federal Wiretapping Act does not contain particularized administrative conciliation and mediation procedures for redressing grievances. *See* 18 U.S.C. § 2520 (Supp.1993) (authorizing damages, equitable relief and/or costs); *compare with Sea Clammers*, 453 U.S. at 15, 23, 101 S.Ct. at 2624, 2628 (after reviewing the elaborate enforcement provisions found in the Federal Water Pollution Control act, court concluded Congress could not have intended for litigants to bypass this comprehensive enforcement scheme by bringing suit directly under section 1983).

The court also rejects the City's attempt to reclassify plaintiffs' section 1983 claim as one arising out of a Fourteenth Amendment violation rather than a Fourth Amendment violation. In their complaint, plaintiffs allege the Fourth and Fourteenth Amendments guarantee plaintiffs the right to be free of unreasonable searches and seizures. Because the Fourth Amendment speaks of searches and seizures, the court understands plaintiffs to be alleging a Fourth Amendment violation and mentioning the Fourteenth Amendment only as the conduit through which the Fourth Amendment applies to the statutes. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).[9]

### C. Count 5

▮ In Count 5, plaintiffs allege the City's warrantless interception of their telephone communications constitutes a violation of plaintiffs' rights under Article I, section 6 of the Illinois Constitution.[10] The City argues plaintiffs may not bring a direct action based on Article I, section 6.

---

9. The City boldly asserts the Fourth Amendment is inapplicable in the instant case without citing to any authority. Because the City raises this argument for the first time in its reply brief, the court declines to address it.

10. Article I, section 6 states, in part: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." S.H.A. Const. Art. I, § 6.

When addressing a state law claim, a federal district court in Illinois is bound to follow Illinois Supreme Court interpretations. *Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1297 (7th Cir. 1992). And, absent authoritative statements from the Illinois Supreme Court, the district court is bound to follow Illinois Appellate Court interpretations of state law absent a good reason to think the Illinois Supreme Court would reject the appellate court's decision. *Shields*, 975 F.2d at 1297.

The court finds no Illinois case directly addressing the issue of whether a person can maintain a direct cause of action for improper eavesdropping under Article I, section 6 of the Illinois Constitution. While the parties both refer to *Newell v. City of Elgin*, 34 Ill.App.3d 719, 340 N.E.2d 344 (2d Dist.1976), that case did not reach the issue. In *Newell*, the plaintiff filed a multi-count complaint, one count (Count 3) of which was based on an illegal search under *both* Article I, section 6 and the Fourth Amendment to the United States Constitution. *Newell*, 34 Ill.App.3d at 720, 340 N.E.2d at 346–47.

Even though the court held that Count 3 stated a cause of action, it never expressly discussed the appropriateness of maintaining that count under Article I, section 6. Rather, the court discussed the efficacy of Count 3 in terms of the Fourth Amendment and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (*Newell*, 34 Ill.App.3d at 723–24, 340 N.E.2d at 348–49.) *Newell* simply does not stand for the proposition that there is a direct cause of action available under Article I, section 6 of the Illinois Constitution.

Nevertheless, the court finds significant guidance on the issue in the Illinois Constitution, the official commentary thereto and Illinois case law. As noted above, Article I, section 6 provides a right to be free from "interceptions of communication by eavesdropping devices." The commentary to Article I, section 6 states that "[s]ection 12 supplements Section 6 by providing that every person shall find a remedy for all injuries and wrongs which he receives to his 'privacy.'" Article I, section 12 provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his * * * privacy." The commentary to section 12 states, in pertinent part, that section 12 "adds, for the first time, the assurance that a person who receives an injury or a wrong for 'invasion of privacy' shall have a remedy." More importantly, the commentary refers to Ill.Rev.Stat. ch. 38, § 14–6 (1969) as already providing a criminal[11] remedy for *invasion of privacy by eavesdropping* as defined in that statute. (emphasis added.) The importance of this part of the commentary is that eavesdropping is considered a type of privacy invasion, and, thus, persons are entitled to a remedy under the remedial scheme of Article I, sections 6 and 12.

That does not completely answer the question of whether a party can bring a direct cause of action for improper eavesdropping under Article I, section 6, however. Illinois courts have interpreted section 12 of Article I to set forth a clear mandate to the courts that "whenever the legislature has failed to provide a remedy, the judiciary must do so." *See, e.g., Yount v. Hesston Corp.*, 124 Ill. App.3d 943, 949, 80 Ill.Dec. 231, 235, 464 N.E.2d 1214, 1218 (2d Dist.1984). As to improper eavesdropping, the Illinois General Assembly has provided a legislative remedy applicable to this case. Specifically, section 14–6 of the Criminal Code of 1961 provides a comprehensive civil damage scheme including actual and punitive damages, for "[a]ny or all parties to any conversation upon which eavesdropping is practiced contrary to this Article." 720 ILCS § 5/14–6 (1993). Additionally, the statute proscribes use of an eavesdropping device to hear or record all or part of any conversation or use or disclosure of any information obtained through eavesdropping. 720 ILCS § 5/14–2 (1993). Thus, under the foregoing statutory scheme, plain-

---

**11.** Although the commentary uses the term "criminal," section 14–6 of the Illinois Criminal Code provided *civil* remedies for eavesdropping violations. Thus, the court will consider the word "criminal" to be a typographical error and that the commentators actually intended to use the term "civil."

tiffs are entitled to maintain an action for civil damages based on the alleged conduct at issue in this case.[12] Because plaintiffs have a potential remedy sufficient to compensate them for any proved wrongs arising out of the alleged eavesdropping, the court believes that an Illinois court considering the issue in light of the facts of this case would not recognize a right to bring a separate action under Article I, section 6 of the Illinois Constitution.[13]

Finally, the court finds plaintiffs' reliance on *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616 (1992) misplaced. The *Rodgers* court addressed the issue of whether a particular statute granted the plaintiff a private cause of action by implication. *Rodgers*, 149 Ill.2d at 307–09, 597 N.E.2d at 619. The *Rodgers* case is sufficiently distinguishable to have no applicability to the issue before this court. Count 5 is accordingly dismissed.

## II. PITZMAN'S MOTION TO DISMISS

### A. Count 11—"Intercept"

Pitzman argues, except as to plaintiffs Amati and Hillstrom, that plaintiffs' complaint contains no allegations that the communications purportedly taped were ever heard by anyone other than the intended participants. Absent such an allegation, Pitzman contends, there was no "interception" within the meaning of the Crime Control Act.

The Crime Control Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, mechanical, or other device[.]" 18 U.S.C. § 2510(4) (Supp.1993); *United States v. Shriver*, 989 F.2d 898, 902 (7th Cir.1992). In *United States v. Turk*, 526 F.2d 654, 657–58 (5th

Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), the Fifth Circuit addressed whether a recorded communication constitutes an interception within the meaning of the statute or whether the police officers subsequent replaying of the cassette tape constituted an "interception." The Fifth Circuit had no problem concluding a drug dealer's action in recording his conversation of a cohort was an "interception." *Turk*, 526 F.2d at 657.

The Fifth Circuit believed the word "acquisition" suggests the central concern of the statute is the activity engaged in at the time of the communication which causes the communication to be overheard by uninvited listeners. *Turk*, 526 F.2d at 658. The court states,

> If a person secrets a recorder in a room and thereby records a conversation between two others, an 'acquisition' occurs at the time the recording is made ... Alternatively, a court facing the issue might conclude that an 'aural acquisition' is accomplished only when two steps are completed—the initial acquisition by the device and the hearing of the communication by the person or persons responsible for the recording. Either of these definitions would require participation by the one charged with an 'interception' in the contemporaneous acquisition of the communication through the use of the device.

*Turk*, 526 F.2d at 658; *Steve Jackson Games, Inc. v. United States Secret Service*, 816 F.Supp. 432, 441–42 (W.D.Tex.1993). The Fifth Circuit declined to adopt either interpretation, merely noting the differing interpretations presented "a nice question." *Turk*, 526 F.2d at 658 n. 3.[14] After reviewing

---

12. The court recognizes that there may be other forms of "eavesdropping" involving purely electronic communications for example which may not be addressed by the Illinois eavesdropping statute. The court does not decide whether a party may bring an action directly under Article I, section 6 for that or similar types of eavesdropping.

13. Of course, plaintiffs have brought numerous counts under the Illinois Eavesdropping Act. Thus, there rights to a remedy under the Illinois Constitution will be adequately protected in this case.

14. "While the Fifth Circuit authority relates to the predecessor statute, Congress intended no change in the existing definition of 'intercept' in amending the statute in 1986." *Steve Jackson Games*, 816 F.Supp. at 432. "The definition of 'intercept' under current law is retained with respect to wire and oral communications except that the term 'or other' is inserted after 'aural. This amendment clarifies that it is illegal to intercept the non-voice portion of a wire communication.' " *Steve Jackson Games*, 816 F.Supp. at 442 (quoting S.R. No. 541, 99th Cong., 2nd Sess. 13 (1986), *reprinted in* 1986 U.S.C.A.A.N. 3555, 3567).

*Turk*, the Eleventh Circuit held in *United States v. Nelson*, 837 F.2d 1519, 1527 (11th Cir.), *cert. denied in Waldhart v. United States*, 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 58 (1988), the term "intercept" as it relates to "aural acquisition" refers to the place where a communication is initially obtained regardless of where the communication is ultimately heard.

■ This court agrees with the Eleventh Circuit that the term "intercept" as it relates to an "acquisition" refers to the place where a communication is initially obtained. Whether the communication is heard by the human ear is irrelevant. As the Fifth Circuit noted in *Turk*, if a tree falls in a forest with no living listeners, there's still a sound if an active tape recorder is present; the sound is aurally acquired at the instant the action causing it occurred. *Turk*, 526 F.2d at 658. Pitzman argues this court should endorse the view that an interception requires two steps, acquisition and hearing. The Crime Control Act was enacted, Pitzman argues, to protect the individual's privacy. This privacy is not affected until the individual's communication is heard by an unintended party. The court disagrees. If a wiretap is placed on an individual's telephone and the conversation is recorded yet never listened to, the individual's conversations would be chilled if he knew of the wiretap. This would be so even if the individual was assured *no one* would listen to his conversations, because the individual's privacy interests are no longer autonomous. Rather, his privacy interests are subject to another's power. Thus, the policy interests behind the Federal Wiretapping Act are best served by the court's interpretation of "intercept." [15]

**15.** The court declines to endorse Pitzman's reliance on *Smith v. Wunker*, 356 F.Supp. 44 (S.D.Ohio 1972), which was later overruled in *Boddie v. American Broadcasting Co.*, 731 F.2d 333, 338 (6th Cir.1984) ("[*Smith*] was wrongly decided").

**16.** Pitzman's remaining arguments regarding Count 13 were addressed in the City's motion to dismiss, and the same analysis is applicable here.

**17.** Pitzman's argument regarding a direct cause of action based on Article I, § 6 of the Illinois Constitution has been addressed in the City's

## B. Count 13

■ Pitzman argues plaintiffs' complaint fails to specify whether he is being sued in his individual or official capacity. Absent such a specification, Pitzman argues, the court should construe Count 13 as a claim against Pitzman in his official capacity. As such, the count is redundant and should be dismissed. The court disagrees. In the heading of the complaint, plaintiffs list Pitzman as being sued individually and as chief of police of the City. This is sufficient to place Pitzman on notice that he is being sued in his individual capacity, as well as his official capacity.[16]

## C. Pitzman's Immunity in Counts 15, 17 and 19 [17]

■ In Count 15, plaintiffs set forth a direct cause of action based on Article I, section 6 of the Illinois Constitution against Pitzman. In Count 17, plaintiffs allege Pitzman committed the tort of intrusion upon the seclusion of another, and in Count 19 plaintiffs allege Pitzman violated the Illinois Eavesdropping Act. Pitzman argues he is immune from damage liability by virtue of the Illinois Tort Immunity Act, 745 ILCS 10/2–201 (1993),[18] and by common law public officials' immunity.

■ However, plaintiffs argue questions of fact exist regarding the application of the Illinois Tort Immunity Act, and this court agrees. For example, despite Pitzman's contention to the contrary, immunity does not extend to: (1) public employee's acts based on corrupt or malicious motives, or (2) public employee's wilful and wanton acts. *Munizza v. City of Chicago*, 222 Ill.App.3d 50, 164 Ill.Dec. 645, 583 N.E.2d 561 (1st Dist.1991).

motion to dismiss and the analysis set forth there applies to Pitzman also. Therefore, Count 15 is dismissed as to Pitzman as well.

**18.** The Illinois Tort Immunity Act provides in relevant part, "Except as otherwise provided by statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2–201 (1993).

Wilful and wanton conduct involves an element of intent or recklessness. *Anderson v. Village of Forest Park,* 238 Ill.App.3d 83, 94, 179 Ill.Dec. 373, 381, 606 N.E.2d 205, 213 (1st Dist.1992). Whether Pitzman acted intentionally in allegedly impermissibly placing a wiretap on the police department's private line is a question that cannot be answered based solely on the allegations in the complaint.[19] Dismissing a portion of the complaint on that basis would therefore be improper. The court will not address plaintiffs' argument that the purchase of insurance constitutes a waiver of governmental immunity, as that fact is not properly before the court.

### D. Count 17

■ In Count 17, plaintiffs allege Pitzman violated their right to privacy and committed the tort of intrusion upon their seclusion. Pitzman argues the Illinois Supreme Court has not recognized the common law tort of intrusion upon seclusion. Alternatively, Pitzman argues that even if the Illinois Supreme Court has recognized such a tort, plaintiffs failed to state a claim based on the tort.

In arguing that the Illinois Supreme Court would not recognize the tort of intrusion upon seclusion, Pitzman urges this court to overrule its earlier decision in *Garrison v. Burke,* No. 91 C 20150, 1993 WL 29909 (N.D.Ill. Feb. 8, 1993). In *Garrison,* after reviewing Illinois law, this court concluded that if faced with the issue today, the Illinois Supreme Court would recognize the tort of intrusion upon seclusion. The court is unpersuaded by Pitzman's arguments regarding *Garrison,* and the court adheres to its previous conclusion.[20]

Pitzman argues plaintiffs have not alleged the tort because they have failed to demonstrate whether anyone overheard their communications (with the exception of the Amati/Hillstrom conversation). In *Lovgren v. Citizens First Nat'l Bank,* 126 Ill.2d 411, 416, 128 Ill.Dec. 542, 543, 534 N.E.2d 987, 988 (1989), the Illinois Supreme Court set forth the tort of intrusion upon the seclusion of another:

> 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'

*Lovgren,* 126 Ill.2d at 416, 128 Ill.Dec. at 543, 534 N.E.2d at 988 (quoting Restatement (Second) of Torts § 652B, at 378 (1977)). The *Lovgren* court noted the nature of the tort depends on some type of highly offensive *prying* into the physical boundaries or affairs of another and its basis is not publication or publicity. *Lovgren,* 126 Ill.2d at 416–17, 128 Ill.Dec. at 544, 534 N.E.2d at 989. The court also noted Prosser and Keaton's treatise on torts cites eavesdropping by wiretapping as an example of the tort. *Lovgren,* 126 Ill.2d at 417, 128 Ill.Dec. at 544, 534 N.E.2d at 989; *see also Thomas v. Pearl,* 998 F.2d 447, 452 (7th Cir.1993).

While the issue of whether a surreptitiously recorded conversation on a tapped tele-

---

**19.** The court is unpersuaded by Pitzman's reliance on *Gavery v. County of Lake,* 160 Ill.App.3d 761, 112 Ill.Dec. 518, 513 N.E.2d 1127 (2d Dist. 1987), *appeal denied,* 118 Ill.2d 542, 117 Ill.Dec. 224, 520 N.E.2d 385 (1988). The court is unable to determine the applicability of section 2–201, 745 ILCS 10/2–201 (1993), because the court has no evidence properly before it of Pitzman's duties and is unable to determine whether he was acting in a discretionary function when he allegedly taped the telephone line. Even if he was acting in a discretionary capacity, Pitzman lost any governmental immunity accorded by section 2–201 if it is proven he intentionally misused his powers of office. *See, e.g., Idlehour Dev. Co. and SSPF, Inc. v. City of St. Charles,* 88 Ill.App.3d 47, 42 Ill.Dec. 929, 409 N.E.2d 544 (2d Dist.1980).

**20.** In *Thomas v. Pearl,* 998 F.2d 447, 451–52 (7th Cir.1993), the Seventh Circuit suggested that such a tort exists in Illinois, citing *Lovgren v. Citizens First Nat'l Bank,* 126 Ill.2d 411, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989). The Seventh Circuit further noted that such an invasion of privacy might include eavesdropping by wiretapping, again citing *Lovgren. Thomas,* 998 F.2d 447, 452 (7th Cir.1993). *Lovgren* itself expressly states that it is not deciding whether such a tort exists in Illinois notwithstanding its discussion of the tort as enunciated by other authorities. *Lovgren,* 126 Ill.2d at 417, 128 Ill.Dec. at 544, 534 N.E.2d at 989.

phone line must actually be overheard to constitute the tort of intrusion into seclusion is an undecided one in Illinois, the court believes that there are several reasons why the Illinois courts would not so limit the cause of action. First, the Illinois Supreme Court has already cited with approval the Restatement (Second) of Torts § 652B (1977) and comments thereto in discussing the elements necessary to prove the tort of intrusion into seclusion. *See Lovgren*, 126 Ill.2d at 417–18, 128 Ill.Dec. at 543–44, 534 N.E.2d at 988–89. The illustrations that follow section 652B state that when "A taps B's telephone wires and installs a recording device to make a record of B's conversations[,] A has invaded B's privacy." Restatement (Second) of Torts § 652B, 379, illustration 3 (1977). Under illustration 3, mere recordation is sufficient. None of the comments or illustrations contained in section 652B suggest that the tort requires that someone actually hear or listen to the recorded information.

Second, several cases from other jurisdictions also support such a conclusion. In *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964), the court held that the tort of intrusion upon seclusion does not require that anyone listen or hear the recordation. More importantly, the court emphasized that a sound recordation obtained by eavesdropping carries with it a *potential* projection of a private conversation and that such potential disclosure impairs the mental peace and comfort associated with an individual's expectation of privacy. *Hamberger*, 106 N.H. at 112, 206 A.2d at 239. Similarly, the Supreme Court of Pennsylvania, while concluding that a plaintiff had not stated a cause

of action for the tort where the recording had not been listened to and had been destroyed, noted that had the evidence shown that there was "some *potential*" that the recording would be heard in the future then the tort would be established. (emphasis added). *Marks v. Bell Tel. Co.*, 460 Pa. 73, 87, 331 A.2d 424, 431 (1975). Additionally, one justice of the Pennsylvania Supreme Court considered the *Hamberger* case to be correct in its holding that "one's seclusion may be as much disrupted by the presence of an electronic ear in a setting where one would normally expect to be alone as it is by the presence of a human ear in that same place." *Marks*, 460 Pa. at 90, 331 A.2d at 433 (Pomeroy, J. concurring). It is this court's opinion that the *Hamberger* case is most consistent with section 652B of the Restatement and as such would be persuasive to the Illinois courts considering the issue.[21]

Lastly, from a purely logical point of view, the secret use of a mechanical listening and recording device to capture private conversations seems to run afoul of the interests sought to be protected by the tort of intrusion upon seclusion. It is an intentional interference with another's solitude or seclusion. Prosser and Keaton on Torts, § 117 at 854 (1984); Restatement (Second) of Torts § 652B, comment a (1977). The placing of a recording device in an area where one has a reasonable expectation of privacy is both intrusive and disruptive. In plain language, it ruins the privacy. One would never obtain the full benefits accorded to a private place if he or she reasonably believed someone would or could be listening.[22] The court is of the

---

**21.** The court makes special note of a district court opinion from within the Seventh Circuit that concludes that the tort requires someone to actually overhear a conversation. *See Moffett v. Gene B. Glick Co.*, 621 F.Supp. 244, 284 (N.D.Ind.1985). The *Moffett* case is not particularly persuasive on this point, however, because it dealt with the surreptitious use of an interoffice intercom where no recording was apparently involved. Thus, there was no potential for future hearing of a recorded conversation. Furthermore, *Moffett* relies on *Vernars v. Young*, 539 F.2d 966, 969 (5th Cir.1976), a case that is distinguishable because it concerned the opening and reading of private mail, and *Marks v. Bell Tel. Co.*, 460 Pa. 73, 331 A.2d 424 (1975), a case which this court has already pointed out recog-

nizes that the tort could be maintained where a recording provides the potential for the conversation to be overheard in the future. *Moffett*, 621 F.Supp. at 284. Accordingly, this court's determination of the likely conclusion Illinois courts will reach on this issue is unaffected by the *Moffett* opinion.

**22.** One need only conjure up slightly different factual circumstances to more clearly appreciate this type of privacy invasion. For example, if one knew that someone had secretly placed a video camera in his or her marital bedroom the consequences to the sanctity of that area would be too apparent to require discussion. Such would be the case whether a video tape was actually made or viewed. It is not the informa-

opinion that if Illinois courts were to adopt this tort, they would also recognize a cause of action as pled in this case. Accordingly, the lack of allegations that anyone actually listened to the recorded telephone conversations do not defeat plaintiffs' claims.

### III. BEU'S MOTION TO DISMISS

Most of the arguments made by Beu have been previously addressed by the court herein with regard to the City's and Pitzman's motion to dismiss, and the analysis applies to Beu with equal force. Regarding Count 25, the court agrees with Beu that plaintiffs' complaint fails to disclose whether they are suing him in his individual or official capacity. Where a party files a section 1983 claim against a public official allegedly acting under color of state law, a court will assume he has been sued in his official capacity. *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir.1985). "If a plaintiff intends to sue public officials in their individual capacities or in both their official and individual capacities he should expressly state so in the complaint." *Kolar*, 756 F.2d at 568; *see also Yeksigian v. Nappi*, 900 F.2d 101, 104, (7th Cir.1990). Plaintiffs argue they have satisfied the federal rules' liberal pleading standard, and cite to *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, — U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The court believes *Leatherman* does not change the position taken by the Seventh Circuit. When a plaintiff is silent regarding whether he is suing a public official in his official or individual capacity, he has not satisfied Fed.R.Civ.P. 8, nor does *Leatherman* prevent a court from construing the plaintiff's silence as a complaint against the official in his or her official capacity.

Moreover, Beu is correct in noting that a section 1983 claim against a public official in his or her official capacity is redundant and unnecessary when the complaint also includes a section 1983 claim against the municipality. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991); *Kohn v. Mucia*, 776 F.Supp. 348, 356 (N.D.Ill.1991).

Therefore, Count 25 is dismissed. Leave is given to amend the complaint within 14 days to include a section 1983 claim against Beu in his individual capacity if plaintiffs so desire.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part. Counts 1, 5, 15 and 25 are dismissed. Leave is given to amend the complaint as to Count 25 within 14 days to state a section 1983 claim against Beu in his individual capacity.

tion that one obtains from such an intrusion that is necessarily tortious, but rather, the fact some-

one has accessed an area reasonably expected to be private.