UNITED STATES of America, Appellee,

v.

Frederick Lyle McINTYRE, Appellant.

UNITED STATES of America, Appellee,

v.

Dale Irwin VanBUSKIRK, Appellant.

Nos. 77–3623, 77–3716.

United States Court of Appeals,
Ninth Circuit.

Sept. 25, 1978.

Rehearings Denied Nov. 13, 1978.

James M. Wilkes (argued), Harley Kurlander (argued), Tucson, Ariz., for appellant.

Bates Butler, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellee.

Before ELY and GOODWIN, Circuit Judges, and PALMIERI *, District Judge.

GOODWIN, Circuit Judge:

McIntyre and VanBuskirk appeal their convictions for violating and conspiring to violate 18 U.S.C. § 2511(1)(a) and (b) (Title III of the Omnibus Crime Control and Safe Streets Act of 1968).[1]

VanBuskirk was Chief of Police of Globe, Arizona, and McIntyre was a Lieutenant in that department. The Assistant Chief of Police was Robert McGann. VanBuskirk and McIntyre suspected McGann of leaking damaging information to political enemies of VanBuskirk. McIntyre also suspected McGann of narcotics trafficking.

On several occasions, McIntyre met with Officers Johnson and Ambos to discuss ways of confirming his suspicions concerning McGann. The three agreed that electronic surveillance of McGann's office would best serve that purpose. McIntyre and Johnson also met with VanBuskirk in a city park near the police station. During this meeting VanBuskirk approved of the plan to "bug" McGann's office if it "could be done legally".

Several days after the meeting in the park, Officer Johnson placed a microphone and transmitter in a briefcase in McGann's office. Johnson and Ambos attempted to monitor McGann's conversations. They were able to overhear only a brief exchange between McGann and Sergeant Gary Stucker. Johnson returned to McGann's office after 45 minutes and removed the briefcase, ending the surveillance. At no time did any of the participants seek a court order or McGann's consent for the surveillance.

The defendants raise four issues on appeal: (1) McGann's reasonable expectation of privacy in his office; (2) the "willful-

ness" of defendants' conduct within the meaning of Title III; (3) the sufficiency of the evidence; and (4) the exclusion of Van-Buskirk's exculpatory polygraph.

*Reasonable Expectation of Privacy*

Title III prohibits the interception of "wire" and "oral communications". For purposes of §§ 2511 *et seq.*, § 2510(2) defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation".

■ The legislative history behind § 2510(2) reflects Congress's intent that *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), serve as a guide to define communications that are uttered under circumstances justifying an expectation of privacy. S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News pp. 2112, 2178. Guided by *Katz*, our inquiry is whether the communications overheard by Johnson and Ambos were uttered by a person (1) who has a subjective expectation of privacy, and (2) whose expectation was objectively reasonable. *United States v. Freie*, 545 F.2d 1217, 1223 (9th Cir. 1976).

There is no question that McGann had a subjective expectation of privacy. At trial McGann testified that he believed that normal conversations in his office could not be overheard, even when the doors to his office were open.

Defendants contend, however, that McGann's expectation of privacy was objectively unreasonable. First, they say that McGann could not reasonably expect to be free from "administrative internal affairs investigations". Second, they say that the

---

* The Honorable Edmund L. Palmieri, United States District Judge for the Southern District of New York, sitting by designation.

1. § 2511.

　(1) Except as otherwise specifically provided in this chapter any person who—
　(a) willfully intercepts, endeavors to intercept, or procures any other person to inter-

cept or endeavor to intercept, any wire or oral communication;
　(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication
* * *
shall be fined not more than $10,000 or imprisoned not more than five years, or both.

architecture of McGann's office made his expectation of privacy unreasonable. Both contentions must fail.

■ A police officer is not, by virtue of his profession, deprived of the protection of the Constitution. *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). This protection extends to warrant-less eavesdropping to overhear conversation from an official's desk and office. *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *United States v. Kahan*, 350 F.Supp. 784 (S.D.N.Y.1972), *rev'd on other grounds*, 479 F.2d 290 (2d Cir. 1973), *rev'd*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974).

■ An established regulatory scheme or specific office practice may, under some circumstances, diminish an employee's reasonable expectation of privacy. *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973); *United States v. Speights*, 557 F.2d 362 (3d Cir. 1977). But defendants here have failed to show a regulatory scheme or specific office practice which would have alerted McGann to expect random monitoring of his conversations. Evidence that other, un-consented, "bugging" may have occurred within the Globe Police Department does not alter our conclusion. Sporadic illegal eavesdropping does not create a regulatory scheme or a specific office practice. In any event, the "bugging" here cannot be termed an "administrative" search.

■ Neither can the "bugging" be justi-fied as an "internal affairs investigation". An employer may search the work area of an employee for misplaced property or, in some circumstances, to supervise work per-formance. *United States v. Bunkers*, 521 F.2d 1217 (9th Cir.), *cert. denied*, 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975); *United States v. Blok*, 88 U.S.App.D.C. 326, 328, 188 F.2d 1019, 1021 (1951). But de-fendants' purpose in "bugging" McGann was, at least in part, to confirm their suspi-cion that he was involved in external crime (narcotics). Therefore, the "bugging" was not an "internal affairs investigation", but part of a criminal investigation, the area of activity for which Title III was written.

Defendants next argue that the physical characteristics of McGann's office made his expectation of privacy unreasonable. At trial defendants introduced evidence to show that at the time of the "bugging" McGann's office doors were open, and that a records clerk worked fifteen feet away in an adjacent room.

■ We cannot accept the argument that an open door made McGann's expectation of privacy unreasonable. Johnson testified that conversations in McGann's office were difficult to overhear even with the office doors open. As noted previously, McGann believed his office conversations to be pri-vate. A business office need not be sealed to offer its occupant a reasonable degree of privacy. The evidence supported a finding that McGann had a reasonable expectation of privacy in his office. It follows that the conversation attempted to be overheard by Johnson and Ambos between McGann and Sergeant Stucker was an "oral communica-tion" within the meaning of 18 U.S.C. § 2510(2).

*"Willfulness" Under § 2511(1)(a) and (b)*

Title III prohibits only the "willful" in-terception of communications. Defendants contend that their action was not "willful" because they believed in good faith that their conduct was legitimate.

Defendants testified that they had sought and followed the advice of a communica-tions technician for the Department of Pub-lic Safety. There was no testimony that the communications technician told them that the use of a hidden microphone was proper in an "internal investigation" of the police department. This defense, however, amounts only to a defense of "ignorance of the law", which this and other courts have pointed out from time to time is no defense. *See, e. g., United States v. Mathews*, 518 F.2d 1296 (9th Cir. 1975).

■ In *United States v. Schilleci*, 545 F.2d 519 (5th Cir. 1977), the court held in reversing a conviction for violating the same statute that a mistaken belief that the

eavesdropping was legal was no defense. The question for the trier of fact is not whether the defendant thought his conduct was legal, but whether the defendant's state of mind was "willful". Ignorance of the law in some cases may convince a jury that the prosecution did not prove willfulness, but such ignorance is relevant only because the issue of willfulness may open up the question of motive.

The meaning of "willful" has not been uniformly applied in federal criminal statutes.[2] It has become necessary to examine each statute to determine legislative intent in using the word "willfully".

A Senate Report cites *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), as a guide to interpreting "willfulness" within the meaning of Title III. S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112, 2181.[3] In *Murdock*, the Court held that a "willful" violation of a revenue act requires more than a mere misunderstanding as to tax liability. A "willful" act is one done with a "bad purpose" or "evil motive". 290 U.S. at 394–95, 54 S.Ct. 223.

The "bad purpose" requirement implicit in Title III indicates that Congress did not intend to subject police officers to criminal sanctions merely because they fail to comply with some of the statute's technical requirements. But Congress did not intend to immunize police officers from Title III penalties simply because they are police officers. The statute is full of references to law enforcement officers as targets of the legislation.

■ A police officer acts outside the scope of his duties with "bad purpose", and hence "willfully" within the meaning of Title III, when he or she engages in electronic surveillance (1) without a court or-

der, and (2) in the absence of the kind of emergency described in 18 U.S.C. § 2518(7). Unless the proscribed conduct is otherwise excused, it can result in both civil and criminal liability.

■ VanBuskirk's approval of the "bugging" only if it "could be done legally" does not automatically excuse him from criminal liability. VanBuskirk's good faith was a question of fact. McIntyre informed VanBuskirk that he suspected that McGann was trafficking in narcotics. Thus, VanBuskirk knew, or should have known, that the surveillance to discover evidence of crime would require a court order. It is interesting that McIntyre and VanBuskirk felt it necessary to hold this conversation "in the park". The trier of fact could find from all the evidence that VanBuskirk "willfully" participated in the endeavor to "bug" McGann's office. *Cf. United States v. Barker*, 178 U.S.App.D.C. 174, 182–83, 546 F.2d 940, 948–49 (1976).

### Sufficiency of Proof

■ Defendants contend that the government failed to prove the allegations in the indictment. The indictment reads, in pertinent part:

" * * * FREDERICK LYLE McINTYRE and DALE IRWIN VanBUSKIRK, wilfully did intercept, endeavor to intercept, and procure other persons to intercept and endeavor to intercept oral communications * * *, all the aforesaid oral communications being between individuals then present in the office of Robert M. McGann in the Globe, Arizona, Police Department and made and sent by and between persons over a telephone located in the office of Robert M. McGann * * *."

Defendants claim a fatal variance between the indictment and the government's proof because no evidence was offered at trial to

---

2. *Compare, United States v. Lizarraga-Lizarraga*, 541 F.2d 826 (9th Cir. 1976) *with United States v. Ehrlichman*, 178 U.S.App.D.C. 144, 546 F.2d 910 (1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977). *See also, Working Papers of the National Commission of Reform of the Federal Criminal Laws* (1970).

3. *See,* Blakey and Hancock, *A Proposed Electronic Surveillance Control Act,* 43 Notre Dame Law. 657 (1968).

prove that there were any communications by and between persons over McGann's telephone during the "bugging". This claim also must fail.

The indictment, following the statutory language, charges the defendants with *procuring others to endeavor to intercept* oral communications. Whether, in fact, McGann made or received any telephone calls during the life of the "bug" is immaterial. The evidence at trial proved that defendants did cause (procure) Johnson and Ambos to try (endeavor) to intercept McGann's conversations.

### *Admission of VanBuskirk's Polygraph*

Prior to trial VanBuskirk participated in a polygraph test administered by the F.B.I. The trial judge refused to admit the results for any purpose. VanBuskirk asserts that this refusal was an abuse of discretion.

This court has recognized the wide discretion district judges have in admitting or excluding polygraphs. In *United States v. Marshall*, 526 F.2d 1349 (9th Cir. 1975), we said, "[A] trial court will rarely abuse its discretion by refusing to admit the evidence, even for a limited purpose and under limited conditions." 526 F.2d at 1360. No facts in the instant case suggest that the trial judge abused her discretion. The administration of the test by a government agent does not establish its reliability or require its receipt in evidence.

Affirmed.