**James L. HOLYCROSS and Larry Fawbush, Petitioners-Appellants,**

**v.**

**INDIANA STATE POLICE BOARD, Respondent-Appellee.**

No. 07A01–8602–CV–32.

Court of Appeals of Indiana, First District.

Jan. 20, 1987.
Rehearing Denied Mar. 2, 1987.

---

**924**

Frank E. Spencer, Indianapolis, for petitioners-appellants.

Linley E. Pearson, Atty. Gen., Charles N. Braun, II, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for respondent-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

James L. Holycross and Larry Fawbush appeal the trial court's judgment upholding the Indiana State Police Board's decision to dismiss them. We affirm.

## FACTS

Holycross and Fawbush were civilian employees for the Indiana State Police. Both men were telecommunications employees primarily responsible for repairing and maintaining all communication equipment used by the police employees at the Pendleton Indiana State Police Post. On December 29, 1981, Holycross and Fawbush were assigned to work in the radio shop and radio dispatch areas. On that night, the two men listened on an intercom system to a conversation among state police officers in Sergeant Andrews' office. They listened for about twenty minutes. Holycross and Fawbush had modified the equipment in the radio room so that they could monitor the meeting. Neither man was authorized by anyone to listen to the conversation or modify the equipment. Furthermore, the officers involved in the conversation were unaware of anyone listening to them.

While listening to the conversation, Trooper Bryant walked into the radio room and heard the conversation coming over the intercom. Fawbush and Holycross attempted to persuade Bryant to stay and listen. Bryant refused. Fawbush felt that based upon Bryant's reaction, what they were doing was wrong. However, this did not stop the monitoring. Trooper Bryant reported this incident to Sgt. Andrews.

Upon receipt of this information, Sgt. Andrews initiated an investigation and staged a meeting on January 7, 1982, whereby Fawbush and Holycross would be apprehended. On that date, a planned conversation took place in Andrews' office. Trooper Biscuso walked into the radio room and found Holycross and Fawbush listening to the conversation over the modified intercom. Trooper Biscuso informed them that what they were doing was wrong. Nevertheless, the two men continued to listen to the meeting.

The Indiana State Police Superintendent dismissed the two civilian employees. The Indiana State Police Board, and eventually the trial court, affirmed this decision. Other relevant facts will appear in our discussion of the issues.

## ISSUES

Restated, the issues are as follows:

1. Whether the trial court's affirmance of the Indiana State Police Board's decision

to dismiss Holycross and Fawbush was supported by sufficient evidence and was not contrary to law.

2. Whether the trial court properly decided that the Indiana State Police Board's decision was an independent review of the Superintendent's action.

## DISCUSSION AND DECISION

*Issue One*

■ An Indiana State Police regulation, 240 Ind.Admin.Code 1–4–28, provides as follows:

"Offenses by employees against the authority of the department shall include, but shall not necessarily be limited to:

"1. The commission of any act prohibited by law or the omission of any act required by law, when said commission or omission is defined as a crime or infraction under the Indiana or Federal Statutes...."

18 U.S.C. § 2511 provides as follows: "Interception and disclosure of wire or oral communications prohibited.

"(1) Except as otherwise specifically provided in this chapter [18 U.S.C. §§ 2510 *et seq.*] any person who—

(a) wilfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication; ....

shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The State Police Superintendent dismissed Holycross and Fawbush for violating 18 U.S.C. § 2511(1)(a). On this appeal they argue that they did not "wilfully" intercept the conversation going on in Sgt. Andrews' office. Based upon this allegation, they claim that the trial court's judgment is contrary to law and unsupported by the evidence.

Holycross and Fawbush rely upon a factual stipulation made between themselves and the state which provided:

"M. The listening by James L. Holycross and Larry Fawbush to the said

parts of conversations in the office of Sgt. James A. Andrews on December 29, 1981, and January 7, 1982, was intentional, but *there is no evidence that their listening ... was motivated by anything other than their curiosity.*"

Record at 87 (emphasis added). Fawbush and Holycross claim that this stipulation precludes the "wilful" element of a § 2511(1)(a) violation.

A number of federal courts have interpreted the meaning of the word "wilfully" in § 2511(1)(a). The Eighth Circuit explained as follows:

"The legislative history of section 2511 reveals that Congress intended 'wilfully' to mean *more than* intentional. S.Rep. No. 1097, 90th Cong., 2d Sess. 70, *reprinted in* 1968 *U.S.Code Cong. and Ad.News* 2112, 2181. For the interception or disclosure of a wire communication to be a *crime*, it must be done 'with a bad purpose ... without justifiable excuse, ... stubbornly, obstinately [or] perversely.' *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933)."

*United States v. Ross* (8th Cir.1983), 713 F.2d 389, 391 (emphasis in original). The Supreme Court in *Murdock* went on to say, "The word is also employed to characterize a thing done without ground for believing it is lawful [citation omitted], or conduct marked by careless disregard whether or not one has the right so to act [citations omitted]." *Murdock*, at 394–95, 54 S.Ct. at 225, 78 L.Ed. at 385. Other federal courts have noted the legislative history of § 2511 as referring to *Murdock* for the definition of "wilfully" and have approved that meaning. *Citron v. Citron* (2d Cir.1983), 722 F.2d 14, 16 ("The word 'wilfully' generally denotes either an intentional violation or a reckless disregard of a known legal duty."), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2350, 80 L.Ed.2d 823; *United States v. McIntyre* (9th Cir.1978), 582 F.2d 1221, 1225. The same standard of wilfullness applies in civil and criminal actions based upon § 2511. *Citron*, at 16.

Although it was stipulated that Holycross and Fawbush's only motivation in eavesdropping was their curiosity, that does not absolve them. Neither does that end our inquiry. To be guilty under § 2511(1)(a), we hold that something less than an actual bad purpose or evil motive will suffice. It is enough that the appellants' actions constituted knowing, intentional conduct "without justifiable excuse". *Murdock*, at 394, 54 S.Ct. at 225, 78 L.Ed. at 385. They had no legal justification or good motive for monitoring the conversations. They had no bona fide reason for believing they could do so. They did not mistakenly or inadvertently stumble upon the conversation. They voluntarily, intentionally and deliberately modified the intercom system. No officer gave them permission to do so. They knew that the police officers were unaware of the eavesdropping. They knew that the meeting was intended to be private. They continued to listen despite being warned twice by police officers who discovered them listening. Under these circumstances, we hold that the dismissal of Fawbush and Holycross for wilfully eavesdropping was supported by sufficient evidence of probative value and was not contrary to law. Curiosity as their motivation did not render their conduct lawful.

*Issue Two*

■ Indiana Code section 10–1–1–6, the statute in effect at all times relevant to these proceedings,[1] provides that after the state police superintendent discharges an employee, the employee can seek review at a public hearing before the Indiana State Police Board. The statute then provides that these proceedings "shall be informal and without recourse to the technical common-law rules of evidence required in proceedings in judicial courts. The board shall designate a reporter for said hearing and after all evidence has been introduced the board shall make an informal finding of facts and a determination based upon said facts." Ind.Code § 10–1–1–6.

On appeal, Holycross and Fawbush allege that the board did not make an independent finding of facts and determination based upon those facts. The appellants claim that the board impermissibly ratified the superintendent's findings and conclusions. We disagree. At the board's hearing, eleven (11) witnesses testified and seven (7) exhibits were introduced. Holycross and Fawbush were represented by counsel who gave opening and closing arguments, presented the men's own case, and cross-examined the state's witnesses. Upon remand, the board made the following statement:

"In accordance with IC 10–1–1–4 and IC 10–1–1–6, the Board has made its independent findings of fact as based upon the applicable law and finds that by a preponderance of the evidence petitioners committed those acts as set forth in Charge I. B (1) of both sets of charges and that the Board has independently reviewed the sanction imposed upon petitioners and finds that the facts support the sanction imposed herein."

Record at 97. Although not a model of draftsmanship, it is clear that the board did not simply adopt the superintendent's decision. The board independently conducted a hearing and made its own findings and conclusions. Therefore, we reject the appellants' argument.

Judgment affirmed.

ROBERTSON and NEAL, JJ., concur.

---

**1.** Ind.Code § 10–1–1–6 has been amended subsequently with minor changes that have no relevance to the facts in this case.