**Pamela A. DORRIS, Pennie Hodges, Marty Scruggs, and David Scruggs,**

v.

**Charles ABSHER, individually and in his official capacity as director, Sumner County Rabies Control, Della Absher, and Sumner County, Tennessee.**

Nos. 3:96–0337, 3:96–0793.

United States District Court, M.D. Tennessee, Nashville Division.

March 25, 1997.

William Gary Blackburn, Nashville, TN, for plaintiffs.

Leah May Dennen, Mark W. Henderson, Gallatin, TN, for defendants.

## MEMORANDUM

### I. *Introduction*

CAMPBELL, District Judge.

Pending before the Court are the Motion By Defendant Sumner County, Tennessee For Judgment On The Pleadings Pursuant To Rule 12(c) Or Alternatively A Motion For Summary Judgment Pursuant To Rule 56 Of The Federal Rules Of Civil Procedure (Docket No. 29), and the Motion For Summary Judgment (Docket No. 32) filed by Plaintiffs. For the reasons set forth below, Defendant Sumner County's Motion is DENIED, and the Plaintiffs' Motion is GRANTED in part and DENIED in part.

### II. *Procedural Background*

On April 9, 1996, Plaintiffs Pamela Dorris and Pennie Hodges filed a Complaint and Motion for Temporary Restraining Order

seeking to enjoin the dissemination of tape recordings of communications among employees of the Sumner County Rabies Control Office, including the Plaintiffs. The tapes were made on March 21, 1996 and March 27, 1996 by Defendant Charles Absher without the knowledge or consent of the Plaintiffs. Plaintiffs sued all three Defendants, Charles Absher, Della Absher and Sumner County under the federal wiretapping statute, 18 U.S.C. §§ 2510, *et seq.;* sued Defendants Charles Absher and Sumner County under the federal civil rights statutes, 42 U.S.C. § 1983; and sued Defendants Charles Absher and Della Absher for intentional infliction of emotional distress under Tennessee law. Plaintiffs also sought, in addition to an injunction, monetary and other relief.

The Court granted Plaintiffs' request for a temporary restraining order barring dissemination of the tape recordings (Docket No. 5). The Court subsequently, after a hearing attended by all parties, issued a preliminary injunction also barring dissemination of the tapes (Docket No. 23).

On August 27, 1996, Plaintiffs Marty Scruggs and David Scruggs filed a Complaint against the same Defendants arising out of the same events as the lawsuit brought by Plaintiffs Dorris and Hodges.

On November 1, 1996, Plaintiffs filed a motion for partial summary judgment against all three Defendants on the federal wiretapping claim. On that same day, Defendant Sumner County filed a motion for summary judgment as to Plaintiffs' claims under the federal wiretapping statute and 42 U.S.C. § 1983.

The Magistrate Judge ordered that the case brought by Plaintiffs Marty Scruggs and David Scruggs be consolidated with this case on December 11, 1996 (Docket No. 42). The Order also reflects the parties' agreement that the Court's ruling on the motions for summary judgment filed in the first case (No. 3:96–0337) shall apply with full force and effect to the second case (No. 3:96–0793).

### III. *Factual Background*

The statements of undisputed material facts and responses filed by the parties reveal the following undisputed facts.[1] In March, 1996, Charles Absher was Director of Rabies Control for Sumner County, Tennessee. During that same period, Plaintiffs Pamela Dorris and Pennie Hodges were employed as animal control officers within Rabies Control. On March 21, 1996, and on March 27, 1996, Defendant Charles Absher surreptitiously recorded oral communications between and among his employees, including the Plaintiffs, without their knowledge or consent and outside his presence.

The recording of the conversations took place at the Office of the Sumner County Rabies Control. No persons other than the employees were present during the conversations, which were of a personal and private nature. The conversations ceased when any car pulled onto the gravel road that was the only entrance to the office building, and which could be seen from the window of Plaintiff Dorris' office within the Rabies Control Office. The conversations also ceased when the telephone was being used.

In recording the oral communications, Defendant Charles Absher used a Sanyo cassette recorder. Defendant Absher turned the recorder on and placed it on the top shelf of the cabinet in the storage room/bathroom of the Rabies Control Office.

Defendant Charles Absher disclosed the contents or played one of the tape recordings for Irene McCreary and Della Absher at the Absher residence in Gallatin, Tennessee at approximately 5:30 p.m. on March 26, 1996. Defendant Charles Absher played one of the tape recordings for Charles Talley and Clarice Talley at approximately 7:30 p.m. on March 26, 1996 at the Talley residence in Oak Grove, Tennessee.

Defendant Charles Absher used the substance of the taped conversations to dictate separation notices for Plaintiffs Marty Scruggs and Pamela Dorris. Defendant Della Absher, via dictation by Defendant

---

**1.** Defendants Charles and Della Absher have not responded to the statements of undisputed material facts filed by either Plaintiffs Dorris and Hodges or Defendant Sumner County. Accordingly, pursuant to Local Rule 8(b)(7), they are deemed to have admitted those facts.

Charles Absher, wrote these separation notices.

On March 28, 1996, Defendant Charles Absher presented the separation notice to Plaintiff Dorris. The notice summarized the bases for termination of her employment using information derived from the tapes recorded in the Rabies Control Office on March 21 and March 27, 1996. Defendant Charles Absher ordered Plaintiff Dorris to leave the premises and threatened to have her removed by a police officer.

On March 28, 1996, when Sumner County Executive Tommy Marlin learned of the existence of the tapes, he took them from Defendant Charles Absher. Defendant Absher represented that no one but himself had listened to the tapes. Mr. Marlin secured the tapes and did not listen to them. He told Defendant Absher not to discuss the tapes or to discipline anyone based on the contents of the tapes.

Mr. Marlin then began an investigation of the matter. He contacted the District Attorney and notified him that Defendant Charles Absher had made the tape recordings. The District Attorney told Mr. Marlin that he did not feel a crime had been committed nor did he deem it necessary to call the United States Attorney.

At a subsequent meeting with Plaintiffs Pamela Dorris and Marty Scruggs, Mr. Marlin told the Plaintiffs that they had not lost their jobs nor would they lose any benefits. Mr. Marlin told these plaintiffs that they could take the remainder of the afternoon off with pay and return to work the following morning. He also told them to advise him of any adverse treatment by Defendant Charles Absher. He told them to contact the District Attorney if they knew of any illegal activity at the dog pound. Mr. Marlin gave the tapes to Plaintiffs Dorris and Scruggs when they asked for them.

Mr. Marlin met with Defendant Charles Absher a second time during the afternoon of March 28, 1996. At that meeting, Mr. Marlin reiterated that the substance of the tape recordings was not to be discussed nor the subject of discipline of any employee. Mr. Marlin instructed Defendant Absher to re-turn to the dog pound and apologize to the employees. He also told Defendant Absher that he would be looking into the matter further. At this point, Defendant Absher admitted that he had allowed his wife to hear the tapes, and stated that there were no other copies of the tapes.

On March 29, 1996, Plaintiffs Pamela Dorris and Marty Scruggs advised Mr. Marlin that Defendant Charles Absher might either have a copy of the tapes or be talking about the contents of the tapes. Consequently, on April 2, 1996, Mr. Marlin wrote a letter to Defendant Charles Absher directing him to turn over any copies of the tapes he might have and reminding him once again that he was not to talk about the contents of the tapes.

Mr. Marlin asked that the Sumner County Commission appoint a committee to investigate the tape incident as well as the overall management and operation of the dog pound. The committee had been formed and was beginning its work when this lawsuit was filed.

Plaintiffs Pamela Dorris and Marty Scruggs lost no pay from their employment nor did they lose any benefits.

## IV. *Analysis*

### A. *The Standards for Considering Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order to prevail, the movant has the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the movant has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In order to defeat the motion, the nonmoving party is required to show, after an adequate time for discovery, that there is a genuine issue of fact as to every essential element of that party's case upon which he will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553. In order to create a genuine factual issue, the nonmoving party must show "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Although the nonmovant need not show that the disputed issue should be resolved in his favor, he must demonstrate that there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

A preponderance of the evidence standard is used in this determination. *Id.* Therefore, if the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," the motion for summary judgment may be granted. *Id. See also Matsushita Electric*, 475 U.S. at 586, 106 S.Ct. at 1356.

## B. *Federal Wiretapping Statute: Plaintiffs' Expectation of Privacy*

In Plaintiffs' Motion for Summary Judgment, Plaintiff Dorris argues that she is entitled to judgment as a matter of law against Defendant Charles Absher for five separate violations of the federal wiretapping statute, 18 U.S.C. §§ 2510, *et seq.*, and Plaintiff Hodges argues that she is entitled to judgment against Defendant Charles Absher for three separate and distinct violations of the statute.

Plaintiff Dorris argues that Defendant Charles Absher violated Section 2511(1)(a) [2] by tape recording her conversations on March 21, 1996 and March 26, 1996. Plaintiff Dorris contends that Defendant Absher disclosed these tape recordings to third parties on two separate occasions, thereby committing two separate violations of Section 2511(1)(c). [3] Finally, Plaintiff Dorris argues that Defendant Absher violated Section 2511(1)(d) [4] by using the taped conversations in creating the separation notice he gave to her, and again when he used the information in attempting to terminate her employment.

Plaintiff Dorris requests statutory damages, under 18 U.S.C. § 2520(c)(2)(B), [5] in the amount of $50,000. [6]

Plaintiff Hodges alleges that Defendant Charles Absher violated Section 2511(1)(a) by tape recording the conversations, and that he violated Section 2511(1)(c) by disclosing the tape recordings on two separate occasions. Plaintiff Hodges requests statutory damages

2. Under 18 U.S.C. § 2511(1)(a), a person violates the statute if he "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ..."

3. Under 18 U.S.C. § 2511(1)(c), a person violates the statute if he "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection ..."

4. Under 18 U.S.C. § 2511(1)(d), a person violates the statute if he "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection ..."

5. 18 U.S.C. § 2520(c)(2) provides:

(2) In any other action under this section, the court may assess as damages whichever is the greater of—
(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

6. Plaintiff Dorris calculates this amount by multiplying the $10,000 statutory amount times five separate violations of the statute—one violation by tape recording, two violations by disclosing the contents of the tapes, and two violations by using the contents of the tapes. *See Romano v. Terdik*, 939 F.Supp. 144, 150 (D.Conn.1996)(statutory amount of $10,000 should be awarded for each separate violation of Section 2511); *Menda Biton v. Menda*, 812 F.Supp. 283, 284–85 (D.P.R. 1993).

in the amount of $30.000.[7]

Plaintiff Dorris alleges that Defendant Della Absher [8] violated Section 2511(1)(d) by listening to the tape recordings, and by using the contents of the tape recordings to create the termination notice for Plaintiff Dorris. *See Thompson v. Dulaney,* 838 F.Supp. 1535, 1547 (D.Utah 1993)(listening to illegally intercepted tape recording constitutes illegal "use"). *But see Reynolds v. Spears,* 857 F.Supp. 1341, 1345 n. 5 (W.D.Ark.1994), aff'd. 93 F.3d 428 (8th Cir.1996). Plaintiff Dorris requests statutory damages of $20,000 for these two violations.

Plaintiff Hodges requests $10,000 in statutory damages from Defendant Della Absher for listening to the tape recordings in violation of Section 2511(1)(d).

Finally, Plaintiffs argue in their Motion that Defendant Sumner County is liable under the federal wiretapping statute for the actions of Defendant Charles Absher.

In a one-paragraph response to the Plaintiffs' Motion, Defendants Charles and Della Absher argue that the surreptitious tape recordings in this case do not violate 18 U.S.C. § 2511 because the Plaintiffs did not have a reasonable expectation of privacy in the area where they were taped. If the Court rules against them on this issue, they apparently do not contest the Plaintiffs' allegations of specific statutory violations and the resulting damages to which they are entitled.

In its response to Plaintiffs' Motion, and in support of its own Motion for Summary Judgment, Defendant Sumner County also argues that Plaintiffs had no reasonable expectation of privacy in the Sumner County Rabies Control Office.

Section 2511 prohibits certain willful interceptions or disclosures of "oral communications" by electronic, mechanical, or other device. "Oral communications" is defined in 18 U.S.C. § 2510(2) as:

> ... any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication.

The courts have interpreted the statutory definition of "oral communication" to require a "subjective expectation of privacy" which is "objectively reasonable" on the part of the person whose oral communication is intercepted. *United States v. McIntyre,* 582 F.2d 1221, 1223 (9th Cir.1978); *Kemp v. Block,* 607 F.Supp. 1262, 1265 (D.Nev.1985).

The Court made the following findings on this issue after the hearing on Plaintiffs' Motion for Preliminary Injunction:

> All the witnesses who testified at the hearing stated that they had an expectation that their conversations would not be heard by persons who were not present. Based on all the proof adduced at the hearing, the Court finds that this expectation was a reasonable one.

Despite Defendants' argument, the claims of the Plaintiffs are not defeated by the fact that the matters in question were recorded in a government office and a government bathroom visited by the public. The uncontradicted testimony is that none of the private conversations that were recorded continued during the time that a member of the public visited the office.

Government employees do not automatically surrender their expectation of privacy at the office door or the office bathroom door. Government employees talking in a government office, or using a government bathroom, have a reasonable expectation that their conversations and activities are private as to persons not present in the government facilities. It would not be reasonable for government employees to have an expectation that all their conversations and bathroom visits are being tape recorded by persons not present. These Plaintiffs are no exception. *United States v. McIntyre,* 582 F.2d at 1223. *See also*

---

7. Plaintiff Hodges calculates this amount by multiplying the $10,000 statutory amount times three separate violations of the statute—one violation by tape recording, and two violations by disclosing the contents of the tapes.

8. Unlike the other individual parties, Defendant Della Absher was not an employee of Sumner County.

*United States of America v. Duncan,* 598 F.2d 839 (4th Cir.1979).

Defendants have presented nothing that persuades the Court to change its previous decision on this issue. Each of the Plaintiffs, who were present in the Rabies Control Office when the tape recordings were made, have filed affidavits essentially reiterating their testimony at the preliminary injunction hearing. Specifically, these affidavits indicate that the conversations took place only when no one else was present; that the conversations stopped when the telephone was being used or when any car turned onto the gravel road that was the only entrance to the office; and that the gravel road was visible from Plaintiff Dorris' office window.

Furthermore, the cases cited by Defendant Sumner County are factually distinguishable from this case. *See Dow Chemical Company v. United States,* 749 F.2d 307 (6th Cir.1984), *aff'd,* 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986)(corporation had no reasonable expectation of privacy, under the Fourth Amendment, as to aerial photography of company's industrial complex); *In re John Doe Trader Number One,* 894 F.2d 240, 241 (7th Cir.1990)(trader in the "crowded, boisterous pits of the Chicago Mercantile Exchange" had no reasonable expectation of privacy in statements made there, which were audible to FBI agent standing a few feet away and wearing a recording device); *United States v. Carroll,* 337 F.Supp. 1260 (D.D.C.1971)(no reasonable expectation of privacy in statements overheard and recorded by individual in adjacent hotel suite).

Accordingly, the Court holds that Plaintiffs had a reasonable expectation of privacy in the conversations intercepted by Defendant Charles Absher. Therefore, Plaintiffs Dorris and Hodges are entitled to summary judgment against Defendants Charles Absher and Della Absher on their federal wiretapping claims. Specifically, Plaintiff Dorris is entitled to judgment against Defendant Charles Absher in the amount of $50,000,[9] and against Defendant Della Absher in the amount of $20,000. Plaintiff Hodges is entitled to judgment against Defendant Charles Absher in the amount of $30,000, and against Defendant Della Absher in the amount of $10,000.

**C. Federal Wiretapping Statute: Governmental Liability**

Defendant Sumner County argues that it cannot be held liable for a violation of the federal wiretapping statute because it is not a "person" as that term is defined in the statute. Plaintiffs argue that a 1987 amendment to the statute indicates that governmental entities are subject to suit for violations of the statute.

As noted above, the Federal Wiretapping Act prohibits certain willful interceptions or disclosures of oral communications by electronic, mechanical, or other device by "any person." 18 U.S.C. § 2511(1). The Act defines the term "person" to include "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6). This definition, the statute's legislative history, and the cases construing the meaning of the term "person" indicate that the term includes governmental employees, but does not include governmental entities. *See PBA Local No. 38 v. Woodbridge Police Department,* 832 F.Supp. 808, 823 (D.N.J.1993); *Spock v. United States,* 464 F.Supp. 510, 514 (S.D.N.Y.1978); S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2179.

The provision of the Act providing for civil liability, 18 U.S.C. § 2520, was amended in January, 1987 as part of the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, § 103, 100 Stat. 1848, 1853 (1986). That amendment added the words "or entity" to the following provision:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person *or entity* which engaged

---

**9.** As stated above, Defendants Charles and Della Absher have not objected to the amount of damages requested by Plaintiffs for violations of the federal wiretapping statute.

in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a)(emphasis added). The amendments added the same language to the civil liability provision for interception of stored wire and electronic communications. 18 U.S.C. § 2707(a). The Senate Committee Report summarizing Section 2707 specifically states that the word "entity" includes governmental entities. S.Rep. No. 541, 99th Cong., 2d Sess. 43 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3597.

Most courts that have considered the issue have held that the 1986 amendments indicate that a governmental entity may be liable in a civil suit for violations of the Act. *In Bodunde v. Parizek,* No. 93–C–1464, 1993 WL 189941, at * 3 (N.D.Ill. May 28, 1993), the court explained that prior to the enactment of the 1986 amendments, the definition of "person" already included business entities, and therefore, those entities could be held liable under Section 2520(a). The addition of the term "entity" to Section 2520(a), therefore, must be construed to refer to governmental entities in order to give full effect to the new language. *Id.* "If [entity] meant only to refer to business entities, it would be redundant or superfluous." *Id.* The *Bodunde* court also noted that the legislative history described above also supported its construction of the statute. *Id.* at * 3–4.

Two other district courts and the Second Circuit Court of Appeals have adopted this reasoning. *PBA Local No. 38 v. Woodbridge Police Department,* 832 F.Supp. 808, 822–23 (D.N.J.1993); *Abbott v. Village of Winthrop Harbor,* No. 93–C–4642, 1995 WL 51553, at *3–5 (N.D.Ill. Feb.4, 1995); *Organizacion JD Ltda. v. U.S. Dept. of Justice,* 18 F.3d 91, 94–95 (2nd Cir.1994)(governmental entity may be held liable under Section 2707(a)).

Only one court has held that the Act does not permit a civil action against a governmental entity despite the 1986 amendments. In *Amati v. City of Woodstock,* 829 F.Supp. 998, 1002–03 (N.D.Ill.1993), the court concluded that governmental entities may not be held liable for civil damages under the Act because they are not included in the definition of the term "person." The court reasoned that the 1986 amendments did not change this result because the addition of the term "or entity" did not clearly indicate Congressional intent to include local government entities as potential civil defendants under the Act. *Id.* Because the court determined that the amendments did not create an ambiguity in the statute, it refused to consider the language in the legislative history indicating the intent to include governmental entities as civil defendants. *Id.*

■ The Court finds the reasoning of the *Bodunde* court and those courts adopting that reasoning more persuasive than the reasoning of the *Amati* court. Based on the language of the statute and its amendments, the legislative history, and the weight of the case law that has considered the issue, the Court holds that governmental entities may be held liable under Section 2520. Accordingly, Defendant Sumner County is not entitled to summary judgment on this issue.

Even though the Court concludes that governmental entities may be held liable under the federal wiretapping statute, the Court is not persuaded that Plaintiffs are entitled to summary judgment against Defendant Sumner County. In that regard, neither party has addressed the appropriate standard for determining the liability of an employer for an employee's violation under the statute. Under these circumstances, the Court concludes that Plaintiffs are not entitled to judgment as a matter of law against Defendant Sumner County. This issue remains an open question.

D. *Municipal Liability Under 42 U.S.C. § 1983*

■ Defendant Sumner County argues in its motion that it is not liable for Plaintiffs' claim brought under 42 U.S.C. § 1983 because Defendant Charles Absher was acting outside the scope of his employment when he made the tape recordings at issue here.[10]

---

**10.** Although the Plaintiffs' response assumes this argument is made with regard to the Federal Wiretapping Act claim, Defendant Sumner County's brief discusses the claim brought under 42 U.S.C. § 1983. Accordingly, the Court will con-

In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 688–96, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local government units may be held liable under 42 U.S.C. § 1983 only when execution of a government's policy or custom inflicts the plaintiff's injury. The Court specifically rejected application of the doctrine of respondeat superior. *Id.*

In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478–83, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986), the Court expanded on the decision in *Monell,* holding that a single act of municipal policymakers may give rise to liability under Section 1983 if that official had "final authority to establish municipal policy with respect to the action ordered." The Court explained that this authority may be granted by legislative enactment or delegated by those who possess such authority. 475 U.S. at 483, 106 S.Ct. at 1300. Whether an official has policymaking authority is a question of state law. *Id.*

Defendant Sumner County argues that it has no policy which allows the recording of employees, and that Defendant Charles Absher was not a policy maker. Plaintiffs argue, on the other hand, that the County Executive, Tommy Marlin, delegated the responsibility of establishing county policy for the Rabies Control Office to Defendant Charles Absher. Plaintiffs David Scruggs and Marty Scruggs have submitted affidavits in which they describe a meeting between the County Executive and employees of the Rabies Control Office. According to those affidavits, Mr. Marlin told the employees that Defendant Charles Absher had full authority to operate the Sumner County Rabies Control Office, that the employees were to follow

Mr. Absher's orders, and that Mr. Marlin was there to "back him up."

Defendant Sumner County cites no statutes or ordinances establishing the governmental structure of Sumner County as it relates to the Rabies Control Office. Nor does it provide affidavits or other evidence providing this information. The only evidence submitted by Defendant Sumner County on this issue is a statement in the affidavit of Mr. Marlin that Sumner County has no policy authorizing the tape recording of employees.

Under these circumstances, Defendant Sumner County has not established the absence of a genuine issue of material fact or that it is entitled to judgment as a matter of law on the Section 1983 claim. Therefore, Defendant Sumner County is not entitled to summary judgment on this issue. It remains an open question.

E. *Failure to State a Claim Under 42 U.S.C. § 1983* [11]

■ In order to succeed on a Section 1983 claim, a plaintiff must establish that: (1) he was deprived of a right secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *See, e.g., Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); *Street v. Corrections Corp. of America,* 102 F.3d 810, 814 (6th Cir.1996).

In their Complaint,[12] Plaintiffs allege violations of the First and Fourteenth Amendments to the United States Constitution.[13]

Defendant Sumner County argues that Plaintiffs' Section 1983 claim must fail because they have not alleged a violation of their rights under federal law or the Constitution. It contends that the conduct at issue

sider this argument as it relates to the Section 1983 claim only.

11. Plaintiffs' federal wiretapping claims against Defendants Sumner County and Charles Absher do not preclude Plaintiffs' Section 1983 claims as to these same defendants because the Section 1983 claims are based on an alleged violation of constitutional, rather than statutory, rights. *See, e.g., PBA Local No. 38,* 832 F.Supp. at 825.

12. The Complaint filed by Plaintiffs Marty and David Scruggs is virtually identical to the one filed by the Plaintiffs Dorris and Hodges.

13. Although the brief filed by Plaintiffs Dorris and Hodges refers to a violation of Plaintiffs' Fourth Amendment rights, that allegation is not contained in Plaintiffs' Complaints. Therefore, the Court cannot consider this issue.

here does not amount to a violation of the Due Process Clause of the Fourteenth Amendment.

The Court does not, however, construe Plaintiffs' citation of the Fourteenth Amendment in the Complaint as raising a due process claim. The Fourteenth Amendment appears to have been cited as the provision by which the First Amendment is applied to the states.

Defendant Sumner County does not address Plaintiffs' First Amendment Claim. Under these circumstances, Defendant Sumner County is not entitled to summary judgment on Plaintiffs' Section 1983 claim. Therefore, the issue of Defendant Sumner County's liability on the Section 1983 claim remains an open question.

Defendant Sumner County also argues that Plaintiffs have suffered no damages as a result of the alleged constitutional deprivations. Plaintiffs argue, on the other hand, that they have suffered embarrassment, and that the adverse publicity resulting from the incident has impeded their ability to work in a job requiring contact with the public.

The appropriate measure of damages in a Section 1983 action was addressed by the Supreme Court in *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). In *Stachura*, which involved a First Amendment claim, the Court held that, in order for a plaintiff to recover compensatory damages for a constitutional violation, he must prove an actual injury resulting from the violation. 477 U.S. at 306–10, 106 S.Ct. at 2543–44. That injury may either be physical or may manifest itself as impairment of reputation, humiliation, or mental and emotional distress. *Id.*

The *Stachura* Court also held that presumed damages may be appropriate where the injury is likely to have occurred, but is difficult to establish. 477 U.S. at 310, 106 S.Ct. at 2545. The Sixth Circuit has specifically held that general damages are to be presumed in First Amendment cases where actual damages are difficult or impossible to quantify. *Walje v. City of Winchester, Kentucky*, 827 F.2d 10, 13 (6th Cir.1987).

In addition, the *Stachura* Court pointed out that nominal damages may be appropriate where the plaintiff has established his Section 1983 claim, but the deprivation has not caused actual, provable injury. 477 U.S. at 308 n. 11, 106 S.Ct at 2543 n. 11.

Given this authority, Defendant Sumner County is not entitled to summary judgment on this issue as a matter of law.

### V. *Conclusion*

In sum, the Court concludes that Defendant Sumner County's Motion for Summary Judgment should be denied, and that Plaintiffs' Motion for Summary Judgment should be granted in part and denied in part.

Plaintiff Dorris is awarded judgment on the federal wiretapping claim against Defendant Charles Absher in the amount of $50,000, and against Defendant Della Absher in the amount of $20,000. Plaintiff Hodges is awarded judgment on the federal wiretapping claim against Defendant Charles Absher in the amount of $30,000, and against Defendant Della Absher in the amount of $10,000. Plaintiffs are not entitled to summary judgment against Defendant Sumner County on the federal wiretapping claim based on the record before the Court. Plaintiffs have not moved for summary judgment on their Section 1983 or state law claims.

It remains an open question whether Defendant Sumner County is liable on the federal wiretapping claim or the Section 1983 claim for the reasons described above. The parties shall have until April 25, 1997 to supplement their cross-motions as to these outstanding issues. Responses, if any, to the supplemental briefs shall be due as provided in Local Rule 8.

It is so ORDERED.